**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM HANNUM, SEAN FREDERICK, OLGA MARYAMCHIK, VICTORIA CARUSO-DAVIS, SUSANA GUEVERA, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2:21-cv-997 |
| THE RETAIL EQUATION, INC., APPRISS INC., ADVANCE AUTO PARTS, INC., ADVANCE STORES COMPANY, INCORPORATED, BEST BUY CO., INC., BEST BUY PURCHASING LLC, BEST BUY STORES, L.P., BUY BUY BABY, INC., CALERES, INC., BG RETAIL, LLC, and DICK'S SPORTING GOODS, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS BEST BUY CO., INC. BEST BUY PURCHASING LLC, AND BEST BUY STORES, L.P.'S MOTION TO COMPEL ARBITRATION AND DISMISS**

Whereas Defendants Best Buy Co., Inc., and Best Buy Purchasing LLC have previously moved to dismiss for a lack of personal jurisdiction (ECF 54) pursuant to the Court's order (ECF 45) and so specially appear to present this motion compel arbitration and dismiss, Defendants Best Buy Co., Inc., Best Buy Purchasing LLC, and Best Buy Stores, L.P., (together, "Best Buy"), by and through their attorneys of record, will and hereby do move for an order compelling arbitration and dismissing the action.

This motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. and the My Best Buy Rewards Program Terms (the "Terms"), to which Plaintiff Sean Frederick agreed, including its arbitration provision. Specifically, the Terms require My Best Buy Program members to submit to arbitration "any dispute or claim against Best Buy arising out of or relating

1

61869669.2

in any way to any products or services sold or distributed by Best Buy including, but not limited to, the advertising of or the sales practices for such products and services," and where program members "received points or a certificate toward such transaction[.]" This agreement is enforceable and encompasses all of Mr. Frederick's claims. Accordingly, his claims must be brought in arbitration and this action must be dismissed in favor of arbitration as to Best Buy.

This motion is based upon the attached brief, the Declarations of Lauren Wallen, Susan Fletcher, and Hannah Olson, and any other papers, pleadings, or evidence that may be presented before or at the hearing on this motion.

Respectfully submitted,

Dated:  January 3, 2022

**BALLARD SPAHR LLP**

/s/ *Daniel JT McKenna*
Daniel McKenna
1735 Market Street, 51st Floor
Philadelphia, Pa 19103
Telephone: 215-864-8321
Facsimile: 215-864-9265
Email: mckennad@ballardspahr.com

*Counsel for Defendants, Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P.*

2

61869669.2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 6

II.   FACTUAL BACKGROUND .............................................................................. 8

      A.    Mr. Frederick Enrolls in the "My Best Buy" Rewards Program and
            Accepts the Program's Terms, Repeatedly. ............................................ 8

      B.    Mr. Frederick Ignores The Arbitration Clause And Sues Best Buy. .................... 11

III.  SEAN FREDERICK MUST BE COMPELLED TO ARBITRATE CLAIMS AGAINST BEST
      BUY. ............................................................................................................. 11

      A.    "Emphatic Federal Policy" Favors Arbitration. ..................................... 12

      B.    Minnesota Law Governs This Dispute. ................................................. 12

      C.    The Arbitration Agreement Is Valid And Enforceable. ......................... 13

      D.    The Arbitration Agreement Encompasses This Dispute. ....................... 15

      E.    No Defense Exists to the Arbitration Agreement's Enforcement. ......... 16

IV.   ARBITRATION SHOULD BE COMPELLED AND THE ACTION DISMISSED. ............ 18

V.    CONCLUSION ................................................................................................. 18

61869669.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) .................................................................................................................16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................7, 8, 9, 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................................................................12

*Bush v. Comcast Cable Commc'ns Mgmt., LLC*,
  No. 2:19-CV-01004-NR, 2020 WL 4199077 (W.D. Pa. July 22, 2020) ...............................18

*Centric Bank v. Sciore*,
  2021 PA Super 178 (Sept. 3, 2021) .......................................................................................17

*Chassen v. Fid. Nat'l Fin., Inc.*,
  836 F.3d 291 (3d Cir. 2016) ...................................................................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................................11

*Feldman v. Google, Inc.*,
  513 F.Supp.2d 229 (E.D. Pa. 2007) ...........................................................................13, 14, 15

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007) .............................................................................................12, 16

*Generational Equity LLC v. Schomaker*,
  62 Fed. Appx. 560 (3d Cir. 2015) ...........................................................................................12

*Green v. SuperShuttle Intern., Inc.*,
  653 F.3d 766 (8th Cir. 2011) ..................................................................................................16

*HelathplanCRM, LLC v. AvMed, Inc.*,
  458 F.Supp.3d 308 (W.D. Pa. 2020) ...........................................................................13, 15, 18

*In re Mintze*,
  434 F.3d 222 (3d Cir. 2006) ...................................................................................................12

*Kirleis v. Dickie, McCamey & Chilocote, P.C.*,
  560 F.3d 156 (3d Cir. 2009) .............................................................................................11, 12

61869669.2

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) (per curiam) ...................................................................................12

*Litman v. Cellco Partnership*,
  655 F.3d 225 (3d Cir. 2011)...........................................................................................16

*Mason v. Lowe's Companies, Inc.*,
  2020 WL 3574313 (W.D. Pa., June 30, 2020) (Bissoon, J.)...............................13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................................................15

*Preston v. Ferrer*,
  552 U.S. 346 (2008)........................................................................................................16

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
  673 F.3d 221 (3d Cir. 2012)...........................................................................................16

*Residential Funding Co., LLC v. Terrace Mortg. Co.*,
  725 F.3d 910 (8th Cir. 2013) .........................................................................................17

*Salley v. Option One Mortg. Corp.*,
  592 Pa. 323 (2007)..........................................................................................................17

*Siebert v. Amateur Athletic Union of U.S., Inc.*,
  422 F.Supp.2d 1033 (D. Minn. 2006).......................................................................13, 14, 15

*Silfee v. Automatic Data Processing, Inc.*,
  696 Fed.Appx. 576 (3d Cir. 2017)..................................................................................11

*Somerset Consulting, LLC v. United Cap. Lenders, LLC*,
  832 F. Supp. 2d 474 (E.D. Pa. 2011) .............................................................................18

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005)......................................................................................12, 15

*White v. Sunoco, Inc.*,
  870 F.3d 257 (3d Cir. 2017)............................................................................................12

**Statutes**

9 U.S.C. § 2.................................................................................................................7, 12

61869669.2

<u>**BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**</u>

**I.     INTRODUCTION**

In 2016, Sean Frederick enrolled in the "My Best Buy" Rewards Program. During the enrollment process, Mr. Frederick agreed to arbitrate any claims he may have against Best Buy. He reconfirmed his agreement to the program's terms, including the agreement to arbitrate disputes, in multiple transactions that followed his initial enrollment. Accordingly, arbitration of this matter should be compelled, and the case should be dismissed as to Best Buy.

Sean Frederick has been a Best Buy customer since at least November 29, 2016 when he enrolled in the "My Best Buy" Rewards Program. *See* Declaration of Lauren Wallen ("Wallen Dec."), Ex. A. My Best Buy members like Mr. Frederick enjoy a variety of perks that are not available to non-members, including receiving rewards points for every dollar spent on eligible Best Buy purchases, free shipping, exclusive deals, early access to sales, and extended return periods. As a condition of receiving those perks, however, Best Buy requires that members like Mr. Frederick agree to the My Best Buy program's terms (the "Terms").

When Mr. Frederick stood at a Best Buy checkout stand on November 29, 2016, and was presented with the screen that read, "Become a My Best Buy Member," "Program Terms available at Bestbuy.com/MyBestBuy," he clicked "Yes, Enroll." *Id*., Ex. D. Doing so triggered the enrollment process, through which his personal information was requested and entered by the cashier, and a screen was presented to him which read as follows:

"By confirming, members agree to the My Best Buy Terms." *Id*., Ex. E. Mr. Frederick pressed the button that reads:



The Terms of the My Best Buy Program that Mr. Frederick accepted include a Dispute Resolution provision. It requires members who have "ANY DISPUTE WITH OR CLAIM AGAINST BEST BUY ARISING OUT OF OR RELATING IN ANY WAY TO ANY PRODUCTS OR SERVICES SOLD OR DISTRIBUTED BY BEST BUY," whether the member

61869669.2

received points or could have received points for the transaction, to "RESOLVE DISPUTES OR CLAIMS BY BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY." *See* Declaration of Susan Fletcher ("Fletcher Dec."), Ex. G § 11. The Terms also require any dispute resolution proceeding "of any nature or in any forum" to be conducted on "an individual basis and not in a class[.]" *Id.*

Every time Mr. Frederick made a purchase using his member number, he was required to once again agree to the Terms. He made numerous purchases (as well as returns) after his enrollment in the My Best Buy Rewards Program. He received points for those purchases. And his purchases earned him a reward certificate that could be used to purchase goods from Best Buy.

Despite reaping these benefits of the My Best Buy program, and agreeing to its Terms including the arbitration of disputes, Mr. Frederick has improperly sued Best Buy in this Court as part of a class action. Of course, the merits of Mr. Frederick's claims are irrelevant on this motion and for this Court; they are for the arbitrator to decide once arbitration is ordered.[1]  The arbitration provision to which Mr. Frederick agreed is valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, and the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Thus, Best Buy respectfully requests that the Court issue an Order compelling Mr. Frederick to arbitrate his claims, and dismiss this case in favor of arbitration.

---

[1] It bears noting nevertheless that Best Buy disclosed in its Return Policy that "Like many retailers, we use a third party to help prevent losses by detecting improper returns," and that "Our third-party processor may record your ID information when you return an item, and keep it in a secure database to help us validate future returns. If we caution you or deny your return, you may request a copy of your Return Activity Report by calling 1-800-652-2331." Wallen Dec., Ex. B. Thus, Mr. Frederick's claims that Best Buy improperly shared his consumer data with Defendant The Retail Equation, Inc., the third party processor, are baseless. *See* Compl. ¶ 50-61.

61869669.2

## II.    FACTUAL BACKGROUND

### A.    Mr. Frederick Enrolls in the "My Best Buy" Rewards Program and Accepts the Program's Terms, Repeatedly.

Best Buy is a retailer of consumer electronics. Best Buy customers can enroll in a rewards program called My Best Buy. Wallen Dec. ¶ 3. Program members receive rewards points for money they spend on qualifying purchases. *Id*. Members may use certificates earned through the accumulation of rewards points to make future purchases. *Id*. Customers can enroll in-person at a Best Buy store, on Best Buy's website, or through its mobile application. *Id*. As part of the check-out process, and guided by Best Buy's Standard Operating Procedures, customers who are not yet members of the My Best Buy Rewards Program are invited to enroll in the My Best Buy Rewards Program through a screen that reads:

> ## Become a My Best Buy Member.
>
> My Best Buy members receive:
> Great rewards,
> Access to exclusive offers and sales,
> And much more
>
> Become a member today for free!
>
> Program Terms available at
>  BestBuy.com/MyBestBuy

*Id*. ¶ 4. Instead of the "No, Thanks" button that allows a transaction to proceed without enrolling in the My Best Buy Rewards Program, customers like Mr. Frederick who choose to enroll click a button on the signature pad which reads:



61869669.2

*Id.* ¶ 5; Ex. D. Selecting "Yes, Enroll" triggers a process by which the cashier requests and enters the customer's name, address, phone number, and email address. *Id*. ¶ 6. This information is initially used to create the My Best Buy account. This information is also verified or changed) in each subsequent transaction through a screen which reads as follows:

> Verify Your Information
>
> [address and email shown]
>
> By confirming, members agree to the My Best Buy Terms. You may ask an associate for the full terms.

*Id.;* Ex. E. To verify the information and confirm agreement, the member clicks the button that reads:



*Id.* ¶ 7. Mr. Frederick enrolled in the My Best Buy Rewards Program at a Best Buy store in Pennsylvania on November 29, 2016. *Id.* ¶ 3. Mr. Frederick's purchase receipt from that day provided the internet links (website address) to Best Buy's return policy and privacy policy. *Id*.; Ex. A. Mr. Frederick's membership number could not have been applied to the several transactions subsequent to his enrollment without going through this process of verification including the repeated confirmation of his agreement to the My Best Buy Terms. *Id.* ¶ 14. The Terms were entered into "between you [Mr. Frederick] and Best Buy Stores, L.P and/or its affiliates." Fletcher Dec., Ex. G at p. 1. Best Buy Stores, L.P. is affiliated with Best Buy Co., Inc. and Best Buy Purchasing, LLC. *See* ECF 54-4, Declaration of Hannah Olson ("Olson Dec.") ¶¶ 3, 7.

The Terms to which Mr. Frederick agreed when he initially enrolled in the My Best Buy Rewards Program, and in every subsequent transaction, contain a Dispute Resolution provision that requires him to resolve "any dispute" with Best Buy through arbitration or small claims

61869669.2

court, as follows:

> 11. **Dispute Resolution**
>
> IN CONSIDERATION FOR PARTICIPATING IN THE PROGRAM, YOU AGREE THAT IF (1) YOU HAVE ANY DISPUTE WITH OR CLAIM AGAINST BEST BUY ARISING OUT OF OR RELATING IN ANY WAY TO ANY PRODUCTS OR SERVICES SOLD OR DISTRIBUTED BY BEST BUY INCLUDING, BUT NOT LIMITED TO, THE ADVERTISING OF OR THE SALES PRACTICES FOR SUCH PRODUCTS AND SERVICES, AND (2) YOU RECEIVED POINTS, COULD HAVE RECEIVED POINTS, OR YOU APPLIED POINTS OR A CERTIFICATE TOWARD SUCH TRANSACTION, THEN YOU WILL RESOLVE DISPUTES OR CLAIMS BY BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY.
>
> BY AGREEING TO ARBITRATION, YOU UNDERSTAND AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO MAINTAIN OTHER AVAILABLE RESOLUTION PROCESSES, SUCH AS A COURT ACTION OR ADMINISTRATIVE PROCEEDING, TO SETTLE DISPUTES. THE RULES IN ARBITRATION ARE DIFFERENT. THERE'S NO JUDGE OR JURY, AND REVIEW IS LIMITED, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME LIMITATIONS STATED IN THE AGREEMENT AS A COURT WOULD.

Fletcher Dec. ¶ 3; Ex. G § 11. The Dispute Resolution provision also provides that "You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed upon location."[2] *Id*., Ex. G § 11. There is no provision permitting an action to proceed court in Pennsylvania. *Id.* The parties also agreed that their disputes would be governed by the FAA and applicable federal law, but in the absence of applicable federal law, the laws of the state of Minnesota—where Best Buy (and the rewards program) is based. *Id.* § 12.

---

[2] And although irrelevant to the determination of this motion, the Dispute Resolution provision also provided that any arbitration could only be conducted on an individual basis, and not as a class action. *Id.*

61869669.2

Mr. Frederick made numerous purchases (as well as returns) after his enrollment in the My Best Buy Rewards Program. Wallen Dec. ¶ 10. The transaction history associated with his My Best Buy account shows that he had at least six such transactions involving purchases after his enrollment, and he received points for those purchases. *Id.* His purchases earned him a reward certificate that could be used to purchase other goods from Best Buy. *Id.* Since November 2016, the My Best Buy Terms have been available to customers at Best Buy store registers and printed by salespeople at customers' requests. Fletcher Dec. ¶ 4.

**B.      Mr. Frederick Ignores The Arbitration Clause And Sues Best Buy.**

Notwithstanding his agreement to the Terms, on August 3, 2020, Mr. Frederick filed this action alleging Best Buy improperly shared his consumer data with Codefendant The Retail Equation, Inc., a retail analytics company, to generate a "risk score" that he alleges Best Buy could then use as a pretext to reject his product returns and exchanges. See Complaint ("Compl.") ¶ 32. Although Best Buy's published and accessible Return Policy expressly explained its use of a third party to detect fraud, (*supra* Note 1) the merits of Mr. Frederick's claims are irrelevant to this motion and cannot be decided by this Court. Because Mr. Frederick accepted the My Best Buy Rewards Program Terms, the merits are for an arbitrator. Best Buy now moves to compel arbitration and to dismiss this action.

**III.    SEAN FREDERICK MUST BE COMPELLED TO ARBITRATE CLAIMS AGAINST BEST BUY.**

Before compelling arbitration pursuant to the FAA, a court must determine that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilocote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). When both elements exist, as they do here, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration." *Silfee v. Automatic Data Processing, Inc.*, 696 Fed.Appx. 576, 577 (3d Cir. 2017) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in *Dean Witter*). The clickwrap agreement to arbitrate disputes arising from Mr. Frederick's

61869669.2

enrollment in the My Best Buy Rewards Program and subsequent transactions at Best Buy must be enforced.

### A.    "Emphatic Federal Policy" Favors Arbitration.

The FAA established that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (citations omitted). Further, the FAA requires "rigorous enforcement of arbitration agreements," *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006), and therefore "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) (internal quotations omitted). The presumption in favor of arbitration "is particularly applicable where the [arbitration] clause is [ ] broad...." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). A motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). And after *Concepcion*, and with only limited exceptions not applicable here, courts recognize that the FAA preempts state laws purporting to invalidate arbitration agreements. *See Generational Equity LLC v. Schomaker*, 62 Fed. Appx. 560, 563 (3d Cir. 2015) (citing *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)).

### B.    Minnesota Law Governs This Dispute.

To determine whether a valid arbitration agreement exists, federal courts apply "ordinary state-law principles that govern formation of contracts." *Kirleis*, 560 F.3d at 160 (internal citations omitted). Likewise, to determine whether a contract's choice-of-law provision is enforceable, federal courts apply the rules of the forum state. *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (*citing LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)). Pennsylvania courts "generally honor the intent of the contracting parties and enforce choice of

61869669.2

law provisions in contracts executed by them" to the extent "the transaction bears a reasonable relation to the chosen forum." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007).

Here, the Terms containing the arbitration agreement also contain a Minnesota choice-of-law provision. Fletcher Dec., Ex. G §12. That choice-of-law provision is enforceable here because Minnesota has a substantial relationship to the parties and the transaction, as it is Best Buy's (including Best Buy Co., Inc., Best Buy Stores, L.P., and Best Buy Purchasing LLC) principal place of business and where Best Buy is headquartered, and where the My Best Buy Rewards Program is operated. ECF 54-5, Olson Dec. ¶¶ 2-5.

### C.  The Arbitration Agreement Is Valid And Enforceable.

Under Minnesota law, clickwrap contracts[3] such as this one are valid and enforceable.[4] *See, e.g., Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F.Supp.2d 1033 (D. Minn. 2006) (arbitration and forum selection clauses in clickwrap agreement were enforceable). Thus, the arbitration clause in the My Best Buy Terms is valid and enforceable.

*Siebert* is illustrative. There, the court upheld mandatory arbitration and forum selection clauses where members of a club basketball league "clicked" an online box to indicate their agreement to be bound to the terms of the league's 164-page online codebook. *Siebert*, 422

---

[3] The Terms are a "clickwrap" contract, i.e., a contract where a consumer clicks a button on a digital screen or online to accept the agreement. *Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F.Supp.2d 1033, 1039-40 (D. Minn. 2006).

[4] Under Pennsylvania law, even if it applied, the result is the same. In Pennsylvania—where Mr. Frederick enrolled in the My Best Buy Rewards Program—clickwrap agreements are upheld regardless of whether a party reads terms of which they have reasonable notice. *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D. Pa. 2007) (forum selection clause in clickwrap agreement enforceable; "Plaintiff's failure to read the Agreement, if that were the case, does not excuse him from being bound by his express agreement."); *see also HelathplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 334 (W.D. Pa. 2020) (recognizing that "clickwrap agreements are routinely enforced by the courts."); *Id.* at 331 (enforcing "browsewrap agreement" even though unlike clickwrap agreements, "browsewrap agreements do not require users to expressly manifest assent." (internal citations omitted)); and *see Mason v. Lowe's Companies, Inc.*, 2020 WL 3574313, at *3 (W.D. Pa., June 30, 2020) (Bissoon, J.) (enforcing arbitration agreement because "[b]y clicking the 'Agree' button, [plaintiff] manifested her intent to be bound by the Arbitration Agreement.").

61869669.2

F.Supp.2d at 1037. The plaintiffs argued that they never reviewed the codebook or read its terms, and thus were not bound by them. *Id*. But the court held that the plaintiffs' "click" accepting the terms constituted assent "whether or not [plaintiffs] actually read the arbitration or forum selection clauses[,]" because "[a]bsent fraud or misrepresentation, 'a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different.'" *Id*. (citing *Malecha v. St. Croix Valley Skydiving Club*, 392 N.W.2d 727, 731 (Minn.Ct.App.1987)).

Here, Mr. Frederick "clicked" to accept the Terms not only when he signed up for the My Best Buy Rewards Program, but in numerous subsequent transactions as well. Wallen Dec., ¶¶ 6-8, 11-14. Moreover, Best Buy's arbitration agreement is not buried in anything nearly as complicated or lengthy as the 164-page codebook in *Siebert*. Fletcher Dec., Ex. G. Even if it were, as in *Siebert*, the arbitration agreement would still be valid, enforceable, and binding.

The result would be the same under the law of Pennsylvania, where Mr. Frederick accepted the My Best Buy Terms, and reaffirmed his assent to the Terms in subsequent transactions. There, courts have held agreements are enforceable where a party manifests assent through a click. *Feldman, Inc.*, 513 F.Supp.2d at 236 (E.D. Pa. 2007); *see also Mason*, 2020 WL 3574313, at *3 (W.D. Pa., June 30, 2020) (Bissoon, J.). And absent a showing of fraud, "failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms." *Id*. For example, plaintiff in *Feldman* claimed he did not have notice of the forum selection clause in a clickwrap agreement. *Id*. The court disregarded the assertion, holding as follows:

> A reasonably prudent internet user would have known of the existence of terms in the AdWords Agreement. Plaintiff had to have had reasonable notice of the terms. By clicking on 'Yes, I agree to the above terms and conditions' button, Plaintiff indicated assent to the terms. Therefore, the requirements of an express contract for reasonable notice of terms and mutual assent are satisfied.

*Id*. at 238. The facts here are similar. Mr. Frederick assented to the Terms that were available to him at the point of sale prior to enrolling in the My Best Buy Rewards Program, and every time

61869669.2

he entered into a transaction at a Best Buy store thereafter. Wallen Dec. ¶ 8. His failure to read the Terms, even if that was the case, does not excuse him from his express agreement.

No matter the applicable law, the outcome is the same based on the facts: Mr. Frederick accepted the arbitration agreement when he agreed to the Terms, and he did so repeatedly. Mr. Frederick first agreed to the Terms on November 26, 2016, when Best Buy informed him where he could access the Terms, and he clicked "Yes, Enroll" to become a member of the My Best Buy program. Wallen Dec., ¶¶ 3-5; Ex. D. Mr. Frederick did so again each and every time he completed a purchase, by clicking "Confirm" when asked whether he agreed to the Terms. Wallen Dec., ¶¶ 7-8; Ex. D-E. As was expressly explained on the screen through which Mr. Frederick confirmed his acceptance of the Terms, "You may ask an associate for the full terms." Wallen Dec. ¶ 6; Ex. E. Those who reviewed the Terms provided by a sales associate could never claim they did not accept them when clicking "Confirm." Whether Mr. Frederick actually read the arbitration clause is irrelevant because applicable law will not excuse a contracting party who elects not to do so. *See Siebert*, 422 F.Supp.2d at 1039; *Feldman, Inc.*, 513 F.Supp.2d at 23; *Healthplan CRM*, 458 F.Supp.3d at 332 ("An internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." (internal quotation marks omitted)). Accordingly, when Mr. Frederick joined the My Best Buy Rewards Program, and when he made purchases as a member of the program, he agreed that claims he had against Best Buy related to sales practices like those alleged here would be resolved by individual arbitration. Mr. Frederick cannot now avoid his agreement.

**D.      The Arbitration Agreement Encompasses This Dispute.**

Because the FAA reflects a "liberal federal policy favoring arbitration agreements," the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, enforcement of an arbitration agreement "should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe*, 401 F.3d at 532.

61869669.2

Here, the arbitration agreement Mr. Frederick accepted encompasses "any dispute with or claim against Best Buy arising out of or relating in any way to any products or services sold or distributed by Best Buy including…the sales practices for such products and services." Fletcher Dec., Ex. G § 11. This lawsuit concerns Best Buy's practice of entering consumers' transaction information into Best Buy's computer system, transmitting it to its codefendant The Retail Equation, Inc., a retail analytics company, to generate a "risk score" which Best Buy then allegedly used to reject product returns and exchanges as fraudulent. *See* Compl. ¶¶ 50-61. According to Mr. Frederick, because of his "risk score," Best Buy allegedly wrongfully denied a return he attempted in March 2018. *Id*. Any reasonable consumer would understand that the Terms apply to disputes concerning Best Buy's sales practices, including those relating to the use of information provided as part of sales transactions and related returns.

### E.    No Defense Exists to the Arbitration Agreement's Enforcement.

The FAA makes an agreement to arbitrate 'valid, irrevocable, and enforceable…save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Gay*, 511 F.3d at 378 (quoting 9 U.S.C. § 2). This "savings clause" of the FAA preserves "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228-29 (3d Cir. 2012). But none of those arguments applies here.

Moreover, the "national policy favoring arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). For example, any argument that a ban on class arbitration is unconscionable is now preempted by the FAA. *Litman v. Cellco Partnership*, 655 F.3d 225 (3d Cir. 2011); *Gay*, 511 F.3d at 369; *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir.2011) (same, under Minnesota law); *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-34 (2013) (upholding class action waiver for "low-value" claims). Absent a "contrary congressional command" to override the FAA, there is no "entitlement to class proceedings for the vindication

16

of statutory rights." *American Express*, 570 U.S. at 233-34. Thus, the class action waiver in the Terms does not affect the enforceability of the arbitration provision.[5]

Mr. Frederick also cannot show that the arbitration agreement is otherwise unconscionable. In Minnesota, an unconscionable contract is one which "'no man in his senses and under delusion would make on the one hand, and…no honest and fair man would accept on the other.'" *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 917 (8th Cir. 2013). A party must demonstrate that it had no meaningful choice but to deal with the other party and to "accept the contract as offered." *Id.* (citing *Sports & Travel Mktg., Inc. v. Chi. Cutlery Co.*, 811 F.Supp. 1372, 1380 (D.Minn.1993) (applying Minnesota law). The standard in Pennsylvania is similar. See *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 331 (2007) ("[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it."); *Centric Bank v. Sciore*, 2021 PA Super 178 (Sept. 3, 2021) (same).

Mr. Frederick cannot reasonably contend that the agreement is so unfair that no person in his or her senses would enter into it. Indeed, the enrollment screen itself presented an option to avoid entering into the agreement altogether—by pressing "No, Thanks" instead of "Yes, Enroll." Wallen Dec. ¶ 5. Regardless, and in addition to providing numerous benefits to members, the agreement provides an inexpensive, efficient, and fair alternative mechanism to resolve disputes such as this one. For instance, the arbitration agreement obligates Best Buy to pay all arbitrator fees and costs for claims under $10,000, to unilaterally waive its claims for attorneys' fees, and to submit to arbitration "by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed upon location." Fletcher Dec., Ex. G § 11. Arbitration is conducted not according to rules created by Best Buy, but by the

---

[5] For the avoidance of doubt, Best Buy does not at this time seek to strike the class allegations. To do so is for another day and another decider – the arbitrator. The issue is identified here solely to demonstrate that the presence of a class action waiver does not vitiate the arbitration clause.

61869669.2

American Arbitration Association's published and accessible rules. *Id.* External, neutral American Arbitration Association arbitrators preside over the arbitration. *Id*. The agreement is, in all senses of the word, fair.

Nor can Mr. Frederick show he had no meaningful choice but to deal with Best Buy and accept the contract offered. Best Buy does not require its customers to become My Best Buy members. Wallen Dec. ¶¶ 3-5. Mr. Frederick was free to purchase products from others, or from Best Buy without enrolling in the My Best Buy Rewards Program. However, Mr. Frederick chose to participate in the program, subjected himself to its Terms, and cannot now avoid those terms he does not like.

## IV.   ARBITRATION SHOULD BE COMPELLED AND THE ACTION DISMISSED.

None of Mr. Frederick's claims belongs in court. All arise from Best Buy's alleged sales practices and fall squarely within the parties' arbitration agreement. Courts in the Third Circuit regularly dismiss cases while compelling arbitration of all claims. *See, e.g.*, *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 490 (E.D. Pa. 2011) (dismissing plaintiffs' amended complaint after granting motion to compel arbitration); *see Healthplan CRM*, 458 F.Supp.3d at 337-38 (same); *Bush v. Comcast Cable Commc'ns Mgmt., LLC*, No. 2:19-CV-01004-NR, 2020 WL 4199077, at *13 (W.D. Pa. July 22, 2020) (same). The Court should do the same here.

## V.   CONCLUSION

Because there is a valid arbitration agreement between the parties that encompasses all of Mr. Frederick's claims, arbitration should be compelled and the case should be dismissed as to Best Buy.

Respectfully submitted,

Dated:  January 3, 2022

**BALLARD SPAHR LLP**

*/s/ Daniel JT McKenna*
Daniel McKenna
1735 Market Street, 51st Floor
Philadelphia, Pa 19103

18

Telephone: 215-864-8321
Facsimile: 215-864-9265
Email: mckennad@ballardspahr.com

*Counsel for Defendants, Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P.*

61869669.2

## CERTIFICATE – Practices and Procedures  §II.A.

Pursuant to Section II.A. of this Court's "Practices and Procedures," counsel certifies that the grounds for this motion are not curable by amendment because they are based upon an arbitration agreement that cannot be plead around. Nevertheless, counsel has made good faith efforts to confer with the non-movant's counsel concerning the substance of the motion. Specifically, this motion is made following the conference of counsel which took place on September 18, 2020 and October 2, 2020 and the correspondence that preceded and followed it concerning the movants' (absence of any) role in the claims asserted, the transactions out of which the claims arise, and the locations in which the movants exist to perform various functions for various Best Buy companies surrounding the operation of the stores and the management of their operations. It was discussed that Best Buy Stores, L.P. operates the Best Buy Stores throughout the country and that neither the corporate parent and holding company (Best Buy Co., Inc.), nor the company that signed the service agreement with The Retail Equation under which services were provided to Best Buy Stores, L.P. (Best Buy Purchasing, LLC), both of which were located in Minnesota, had any role in the collection, transmission or use of the data that is alleged to be plaintiffs' private information as part of the transaction involving Plaintiff Frederick in Pennsylvania or otherwise. After the unsuccessful meet and confer and briefing on the motion to compel arbitration in the California federal action, Plaintiff Frederick was omitted from the Amended Complaint filed in that action, and he was included in this action as a plaintiff and alleges essentially the same claims. This motion to compel renews the arguments previously asserted that could not be resolved informally, but that were mooted by the dismissal of Frederick's claims, as well as those discussed by the representative of the defendants' counsel group on November 3, 2021 who has coordinated the filing of these motions by the stipulation approved by the court in relation to this action.

/s/ Daniel JT McKenna
Daniel JT McKenna

61869669.2