**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM HANNUM et al., | |
| Plaintiffs, | |
| | Case No. 2:21-cv-00997-CB |
| vs. | |
| THE RETAIL EQUATION, INC. et al., | |
| Defendants. | |

## MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(b)(1)

Defendants Caleres, Inc. and BG Retail, LLC ("Caleres Defendants") move this Court for an Order dismissing the putative class action Complaint [ECF No. 1]("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lack Article III standing as to all claims asserted against the Caleres Defendants.

Plaintiff Victoria Caruso-Davis, the only plaintiff alleged to have had any interaction with the Caleres Defendants, fails to allege any tangible or economic injury, and the evidence submitted with this Motion demonstrates that Famous Footwear, a wholly owned subsidiary of BG Retail, LLC, processed Caruso-Davis' return and provided a full refund. Nor has Caruso-Davis articulated any intangible harm with a close relationship to a harm traditionally recognized under the common law. As a result, she has failed to allege an injury-in-fact and lacks standing to maintain her claims. Furthermore, because no other plaintiff alleges any interaction with the Caleres Defendants, they lack standing to maintain any claim against them.

This Motion is based upon the accompanying brief, the pleadings and records on file in this action, the Declaration of Thomas C. Burke in Support of Motions of Caleres, Inc. and BG

Retail, LLC to Dismiss the Complaint, [ECF No. 54, # 3], and such other evidence and argument

as may be presented to the Court at or before the hearing on the Motion.

## TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................................... 1

II.  Background..................................................................................................................... 2

III. Legal Analysis .............................................................................................................. 4

   A.   Plaintiff Bears the Burden of Establishing an Injury-In-Fact that Is Concrete and
      Particularized and Not Conjectural or Hypothetical ....................................................... 4

   B.   Caruso-Davis Fails to Allege an Injury-In-Fact................................................................ 5

      1.   Caruso-Davis Suffered No Economic or Other Tangible Injury ............................ 5

      2.   Sharing Voluntarily Provided Data for Legitimate Business Purposes Is Not an
         Injury in Fact........................................................................................................ 10

IV.  Conclusion................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
957 F. Supp. 2d 1135 (C.D. Cal. 2013), *aff'd, 635 F. App'x 351* (9th Cir. 2015) ....................................................................................................................13

*Boring v. Google Inc.*,
362 Fed. App'x. 273 (3d Cir. 2010)....................................................................11

*Com. v. Diego*
(Pa. Super. Ct. 2015) 119 A.3d 370 ...................................................................12

*Com. v. Proetto*
(Pa. Super. Ct. 2001) 771 A.2d 823, *aff'd* (2003) 575 Pa. 511 .............................13

*Constitution Party of Pennsylvania v. Aichele*
(3d Cir. 2014) 757 F.3d 347.................................................................................5

*Cottrell v. Alcon Laboratories*,
874 F.3d 154 (3d Cir. 2017)..................................................................................6

*Elkind v. Revlon Consumer Prods. Corp.*,
No. 14-cv-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)..............................10

*In re Facebook Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ..............................................................................14

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016)..................................................................................6

*Frost v. Sioux City*,
920 F.3d 1158 (8th Cir. 2019) ..............................................................................9

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*
(3d Cir. 2015) 806 F.3d 125................................................................................15

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................................................................14

*In re Google Location History Litigation*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021)................................................................14

*Harris by Harris v. Easton Pub. Co.*
(Pa. Super. Ct. 1984) 335 Pa.Super. 141 .............................................................12

2

*Hesse v. Godiva Chocolatier, Inc.*
(S.D.N.Y. 2020) 463 F.Supp.3d 453..................................................................................9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................................13

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices
and Liability Litigation*
(3d Cir. 2018) 903 F.3d 278.........................................................................................6, 9

*Legg v. Leaders Life Ins. Co.*,
2021 WL 5772496 (W.D. Okla. Dec. 6, 2021)..................................................................9

*Lewis v. Casey*,
518 U.S. 343 (1996)...........................................................................................................4

*Low v. LinkedIn Corp.*
(N.D. Cal. 2012) 900 F.Supp.2d 1010 .............................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................2, 4, 5, 9

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ...........................................................................................5

*McNair v. Synapse Grp. Inc.*,
672 F.3d 213 (3d Cir. 2012)...............................................................................................9

*Moss v. U.S. Secret Service*,
572 F.3d 962 (9th Cir. 2009) .............................................................................................5

*In re Nickelodeon Consumer Privacy Litigation*
(3d Cir. 2016) 827 F.3d 262.............................................................................................14

*Perloff v. Transamerica Life Ins. Co.*,
393 F. Supp. 3d 404 (E.D. Pa. 2019) ...............................................................................11

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011)..................................................................................................7

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd, 380 F. App'x 689* (9th Cir.
2010) ................................................................................................................................14

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*
(3d Cir. 2012) 678 F.3d 235...............................................................................................5

3

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976)..................................................................................................4, 5

*Spokeo, Inc. v. Robbins*,
    578 U.S. 330 (2016)...................................................................................................4

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)...............................................4

*Steinberg v. CVS Caremark Corp.*
    (E.D. Pa. 2012) 899 F.Supp.2d 331 .......................................................................12

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..................................................................................5, 8, 10, 12

*Vogel v. W. T. Grant Co.*
    (1974) 458 Pa. 124 .............................................................................................11, 12

**Statutes**

Fair Credit Reporting Act ...........................................................................................8

Unfair Trade Practices And Consumer Protection Law ...........................................1, 3

**Other Authorities**

FRCP 12(b)(1) ...........................................................................................................1

Restatement (Second) of Torts...................................................................................11

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS – FRCP 12(b)(1)**

## I.    INTRODUCTION

Plaintiff Victoria Caruso-Davis alleges that when she returned merchandise at Famous Footwear,[1] the sales associate requested her identification and credit card and entered information into Famous Footwear's computer system, that information was transmitted to defendant The Retail Equation ("TRE"), and TRE used the information "to generate a 'risk score' for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange."[2] Caruso-Davis alleges the sales associate told her the transaction was flagged as "potentially fraudulent" and that "future returns" would be declined. She does *not* allege that Famous Footwear refused her return or failed to refund her money. Indeed, Caruso-Davis does not even allege that her return was not, in fact, fraudulent.

Upon this very slim reed, Caruso-Davis attempts to state claims for invasion of privacy, violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and unjust enrichment. The problem for Caruso-Davis is that she fails to allege any actual injury sufficient to confer Article III standing. She lost no money or property. Any money paid to Famous Footwear was returned to her, leaving her in precisely the same position she was in prior to making a purchase. And though Caruso-Davis alleges she was told that future returns would be declined, the mere prospect that *if* she were to make another purchase from Famous Footwear, and *if* she wished to return what she bought, Famous Footwear would decline her return, is far too speculative to constitute injury in fact. Furthermore, although she alleges that she was unaware that Famous Footwear would share the information she voluntarily provided to the sales associate with TRE,

---

[1] Famous Footwear is a division of Defendant BG Retail, LLC, a wholly owned subsidiary of Caleres, Inc.  *See* Declaration of Thomas Burke in support of Motions of Caleres, Inc. and BG Retail, LC to Dismiss the Complaint [ECF No. 54, # 3] ("Burke Decl."), ¶ 2-3.
[2] Compl., ¶ 82.

she does not allege that Famous Footwear ever promised that it would not share her information with third party service providers, or gave her any other reason to believe that her information would not be used in processing her return. In the absence of any such allegations, Caruso-Davis fails to satisfy the Constitutional requirement that her injury be "concrete and particularized" as opposed to merely "conjectural or hypothetical."[3] Accordingly, this Court lacks subject matter jurisdiction over her claims and they must be dismissed.

## II.    BACKGROUND

The Complaint alleges as follows: On October 29, 2019, Caruso-Davis initiated a return at Famous Footwear. Compl. ¶ 75. Plaintiff handed the sales associate her drivers' license and credit card, the associate entered unspecified[4] information into a computer, and this "identifying and transaction information" was transmitted electronically to TRE, a third party service provider that "uses statistical modeling and analytics to detect fraudulent and abusive behavior when returns are processed at retailers' return counters." *Id.* ¶¶ 16, 77-79. The information was "used by TRE to generate a 'risk score' for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange." *Id.* ¶ 83. After receiving her information, "TRE communicated to Famous Footwear's sales associate that the attempted return or exchange was flagged as potentially fraudulent" and "Famous Footwear's sales associate communicated to Plaintiff Caruso-Davis that … future attempts by Plaintiff Caruso-Davis to return or exchange merchandise would be declined based upon the recommendation of TRE." *Id.* ¶ 84-85.

Notably, and in contrast to all other Plaintiffs in this case, Caruso-Davis does ***not*** allege

---

[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (quotations omitted).
[4] The Complaint does not identify what data was collected, but implies that information included information from her driver's license and credit card.  [Compl. ¶¶ 77-79]

that Famous Footwear declined her return, and Famous Footwear's records show that the company accepted her merchandise and refunded her money. Burke Decl., ¶ 6.[5] Nor does Caruso-Davis allege that Famous Footwear made any representations regarding how the information she provided would be used or with whom it might be shared.

Plaintiff attempts to state three claims against the Caleres Defendants. She alleges that her privacy was invaded because she "reasonably expected that [her] Consumer Commercial Activity Data and Consumer ID Data would not be collected, used, sold, and/or disclosed by Defendants without appropriate notice and/or disclosures." *Id.*, ¶ 115. She further alleges that "collecting, selling, using and/or disclosing Consumer Commercial Activity Data and Consumer ID Data, is highly offensive to a reasonable person in Plaintiffs' and Class members' position," but alleges no facts explaining why sharing voluntarily provided information in an effort to reduce fraudulent returns is highly offensive. *Id.*, ¶ 117.

For her UTPCPL claim, Caruso-Davis alleges that Defendants "intended to mislead consumers and induce them to rely on their misrepresentations and omissions," but she fails to allege any such misrepresentations or omissions by the Caleres Defendants. *Id.*, ¶ 135. Caruso-Davis' sole allegation with respect to injury on her UTPCPL claim is the conclusory assertion that she "suffered and will continue to suffer damages, injury, ascertainable losses of money or property, and monetary and non-monetary damages as alleged herein." *Id.*, ¶ 139.

For her unjust enrichment claim, Caruso-Davis alleges that she "would not have paid as much for merchandise from [Caleres/BG Retail] had [she] known [her] Consumer Commercial

---

[5] At ¶ 35 of the Complaint, Plaintiffs broadly allege that "each Retail Defendant refused a valid return or exchange based on TRE's scarlet letter concerning one of the Plaintiffs," however, the allegations concerning the Caleres Defendants allege only that Caruso-Davis was warned future returns would be denied, and the evidence [ECF No. 54, #3] shows that her return was processed.

3

Activity Data and Consumer ID Data was being shared, received, and used by Defendants in the manner described herein," and that Defendants "should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds that Defendants received." *Id.*, ¶¶ 158-160. However, Caruso-Davis does not allege the Caleres Defendants retained her money or property, or otherwise profited from her data.

## III.   LEGAL ANALYSIS

### A. Plaintiff Bears the Burden of Establishing an Injury-In-Fact that Is Concrete and Particularized and Not Conjectural or Hypothetical

A "suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976).

The "irreducible constitutional minimum" of Article III standing has three elements: (1) "an injury in fact;" (2) "a causal connection between the injury and the conduct complained of;" and (3) it is "likely," as opposed to "merely speculative, that the injury will be 'redressed by a favorable decision.'" *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in fact is the "[f]irst and foremost" of standing's three elements. *Spokeo*, 578 U.S. 338. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S., at 560.

"[S]tanding is not dispensed in gross...." *Lewis v. Casey,* 518 U.S. 343, 358, n. 6 (1996). Plaintiffs must show Article III standing "for each claim that they press and for each form of relief

4

that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210-11 (2021). Significantly, "[t]hat a suit may be a class action… adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon,* 426 U.S. at 40, n. 20.

A challenge to standing may be "facial" or "factual." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action* (3d Cir. 2012) 678 F.3d 235, 243. In a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*, 678 F.3d at 243. Where defendant mounts a factual attack by presenting evidence controverting plainitff's allegations, "the District Court may look beyond the pleadings to ascertain the facts." *Constitution Party of Pennsylvania v. Aichele* (3d Cir. 2014) 757 F.3d 347, 358. Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan,* 504 U.S. at 561. Uncontroverted allegations are presumed true, [*Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011)], however, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'" are not entitled to a presumption of truth. *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

## B. Caruso-Davis Fails to Allege an Injury-In-Fact

### 1.    Caruso-Davis Suffered No Economic or Other Tangible Injury

Caruso-Davis received a full refund of any money paid to Famous Footwear and alleges no other cognizable harm. As a result, she fails to allege an injury-in-fact. To be sure, Caruso-Davis *attempts* to allege so-called benefit-of-the-bargain damages, asserting in wholly conclusory

terms that had she known Famous Footwear would share her information with TRE she would not have made a purchase, or would not have paid as much as she did. Compl., ¶¶157-158. On proper facts, benefit of the bargain damages may suffice to establish Article III injury. *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Liability Litigation* (3d Cir. 2018) 903 F.3d 278, 287. But courts may not accept conclusory assertions of injury at face value "because Article III requires [courts] to ensure that plaintiffs present more than merely conjectural assertions of injury." *Id.*, at 287. As the court in *Johnson & Johnson*, a case in which plaintiff alleged Baby Powder caused cancer in some users, explained:

> [A] plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing. She must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture. Accordingly, [plaintiff] must do more than simply characterize her Baby Powder purchases as economic injuries; she must allege facts that would permit a factfinder to determine that the economic benefit she received in purchasing the powder was worth less than the economic benefit for which she bargained.

*Id.*, at 285. In that case, the court found that because plaintiff conceded she received the promised benefits of the product (*i.e.*, reduced friction and moisture, enhanced freshness), and it had not proven unsafe **as to her,** she received the benefit of her bargain and suffered no injury-in-fact. As the court put it, "our precedent requires the plaintiff to do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *Id.*, at 288. *Compare Cottrell v. Alcon Laboratories*, 874 F.3d 154 (3d Cir. 2017) (finding that plaintiff alleged ascertainable loss where defendants' "unfair" packaging of eye drops rendered identifiable portion of product unusable) *with Finkelman v. Nat'l Football League*, 810 F.3d 187, 197 (3d Cir. 2016) (plaintiff failed to allege sufficient facts to permit court to conclude that he paid ascertainably higher price for Super Bowl tickets in secondary market due to NFL's lottery distribution system). Here, similar to the plaintiff in *Johnson and Johnson*, who alleged that other consumers got cancer but she did

6

not, Caruso-Davis alleges that other plaintiffs had their returns denied but does not allege that her own return was declined. And because Caruso-Davis does not allege that the merchandise she purchased was otherwise deficient, like the plaintiff in *Johnson and Johnson*, she received the benefit of her bargain and suffered no injury.

Perhaps more importantly, even *if* Caruso-Davis *had* alleged facts from which an ascertainable overpayment might be divined, because Caruso-Davis received a full refund of any money paid to Famous Footwear, any purported overpayment she might hope to articulate cannot suffice to show injury because that payment was returned to her in full; leaving her in precisely the same position she would have been in had she not purchased anything at all. As a result, Plaintiff has failed to allege any economic injury that could support standing here.

Nor can Plaintiff rely on the allegation that as a result of TRE's generation of a risk score, she "was prevented from making future returns or exchanges." Compl. ¶ 87. The supposition that *if* Plaintiff were to make a future purchase from Famous Footwear, *and* that she is likely to want to return the purchased item, *and* that Famous Footwear would decline that return, is far too conjectural to support standing. The Third Circuit has long held that claims of speculative future injury are insufficient to confer standing. For example, in *Reilly v. Ceridian Corp.*, 664 F.3d 38, 45 (3d Cir. 2011), plaintiff alleged that defendant payroll processing company allowed a computer hacker to access "personal and financial information belonging to [plaintiffs] and approximately 27,000 employees at 1,900 companies." *Id.*, 40. Unlike here, the information accessed included highly sensitive personal data, including first name, last name, social security number and, "in several cases, birth date and/or the bank account that is used for direct deposit." *Id.* Plaintiffs claimed they suffered an increased risk of identity theft, incurred costs to monitor their credit activity, and emotional distress. *Id.* Explaining that "[a]llegations of 'possible future

7

injury' are not sufficient to satisfy Article III," the court held that plaintiffs' allegations were insufficient because they rely "on speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of [plaintiffs] by making unauthorized transactions in [plaintiffs'] names." *Id.*, 42. "Unless and until these conjectures come true, [plaintiffs] have not suffered any injury…." *Id.* Similarly here, unless and until Plaintiff were to make another purchase and attempt a return, and Famous Footwear denies such a return, any assertion of injury is entirely conjectural.

The Supreme Court recently affirmed the Third Circuit's view on standing in *TransUnion*, holding that a risk of future harm is insufficient to confer Article III standing on a claim for damages. *TransUnion*, 141 S. Ct. at 2210.[6] In *Transunion*, plaintiffs alleged that the defendant recklessly listed them as being on the Treasury Department's Office of Foreign Assets Control ("OFAC") list, essentially labeling them as potential terrorists in violation of the Fair Credit Reporting Act ("FCRA"). The Supreme Court held that plaintiffs who had been erroneously labeled as terrorists but whose reports had not yet been disseminated to a third party creditor lacked Article III standing, rejecting the contention that "the existence of misleading OFAC alerts in their internal credit files exposed them to a material risk that the information would be disseminated in the future to third parties and thereby cause them harm." *Id.*, 2210. Instead, the Court agreed with Transunion that "if an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm…. If the risk of future harm does not materialize, then the individual cannot establish a concrete harm

---

[6] The Court allowed that risk of future harm might suffice where injunctive relief is sought to prevent "sufficiently imminent and substantial" injury. [*Id.*, 2210]. Caruso-Davis alleges no imminent or substantial injury.

sufficient for standing…." *Id.*, 2211. *See also Legg v. Leaders Life Ins. Co.*, 2021 WL 5772496, at *6 (W.D. Okla. Dec. 6, 2021) (applying *Transunion* and finding that where plaintiff alleged at best a "plausible inference that at some unknown time in the future, some of the putative class members may be the victim of identity theft or fraud," such "non-imminent risk of possible future injury" was "not sufficient to confer standing."); *Lujan,* 504 U.S. at 563-64 ("Such 'some day' intentions – without description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases required."); *McNair v. Synapse Grp. Inc.,* 672 F.3d 213, 224-25 (3d Cir. 2012) (former customers of magazine did not have standing as to deceptive subscription-renewal practices because plaintiffs "d[id] not allege that they intended to subscribe [to the magazine] again"); *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (plaintiff's past injuries did not grant her standing to seek injunctive relief because plaintiff failed to show that she faced a "real and immediate threat that she would again suffer similar injury in the future").

Caruso-Davis does not allege any concrete plans – or even a general intent – to return to Famous Footwear, purchase its products, or seek a return or exchange. Nor could she. In addition to being entirely speculative, an allegation of future injury from Famous Footwear sharing information with TRE cannot support standing because having alleged that Famous Footwear previously shared her data with TRE, she can hardly be heard to claim that she nevertheless made another purchase from Famous Footwear knowing of its policy and, in so doing, received less than she bargained for. *Johnson & Johnson*, 903 F.3d at 292 ("Because Estrada makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury."); *Hesse v. Godiva Chocolatier, Inc.* (S.D.N.Y. 2020) 463 F.Supp.3d 453, 465 ("[P]ermitting such a theory of future

9

harm requires the Court to put blinders on the fact that Plaintiffs, by virtue of bringing this litigation and the allegations they make in their complaint, know that Godiva's chocolates are not manufactured in Belgium. It is difficult to fathom how they could be harmed by Godiva's continued representation if they know that the company's chocolates come from Pennsylvania."); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484, 2015 WL 2344134, at \*3 (E.D.N.Y. May 14, 2015) (because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them.").

In sum, Plaintiff has alleged no facts that could support an Article III injury-in-fact and conjecture that she might be declined a return at some unspecified future date is patently insufficient to confer standing.

### 2. Sharing Voluntarily Provided Data for Legitimate Business Purposes Is Not an Injury in Fact

Having failed to allege any economic injury, Defendants expect that Caruso-Davis will argue that she suffered intangible harm by virtue of having her data shared with TRE. The Supreme Court in *Transunion* recognized that "intangible harms can also be concrete," explaining that "[c]hief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including "reputational harms, disclosure of private information, and intrusion upon seclusion." 141 S.Ct. at 2204. In so noting, however, the Court also made clear that allegations that would not constitute a claim under the common law likewise do not suffice to confer Article III standing. Thus, the Court rejected plaintiffs' argument that thousands of class members whose erroneous OFAC status was communicated to Transunion employees and printing vendors asserted an injury akin to common law defamation because "plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently

10

'close relationship' to the traditional defamation tort to qualify for Article III standing." *Id*., at 2210, n. 6.

Here, Caruso-Davis does not assert a claim for defamation, though she does assert a claim for invasion of privacy, alleging that Defendants "unlawfully invaded Plaintiffs' and Class members' privacy rights by… collecting, selling, using and/or disclosing Plaintiffs' and Class members' Consumer Commercial Activity Data and Consumer ID Data in a manner highly offensive to a reasonable person" and without "appropriate notice and disclosures." Compl., ¶¶ 116-117. Pennsylvania courts follow the Restatement (Second) of Torts in recognizing four species of invasion of privacy. *Boring v. Google Inc.*, 362 Fed. App'x. 273, 278 (3d Cir. 2010). Caruso-Davis does not specify which variety she intends to assert, but her conclusory references to a "reasonable expectation of privacy" and "a manner highly offensive to a reasonable person" indicate that she intends an intrusion upon seclusion, which requires proof of an "[i]ntentional intrusion upon the seclusion of [plaintiffs'] private concerns which was substantial and highly offensive to a reasonable person…" *Boring v. Google Inc.*, 362 Fed.App'x. 273, 279.[7] The problem for Caruso-Davis is that she fails to allege any injury that bears a 'close relationship' to the traditional intrusion upon seclusion tort to qualify for Article III standing. *Transunion*, 141 U.S. 2210, n. 6.

 First, intrusion upon seclusion requires that the defendant have "invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Harris by Harris v. Easton*

---

[7] The only other form of invasion of privacy that plaintiff might conceivably be aiming to assert – "unreasonable publicity given to another's private life" – would not lie here, as Pennsylvania law is clear that disclosure to a small group of individuals does not constitute "publication" for purposes of the tort. *Perloff v. Transamerica Life Ins. Co*., 393 F. Supp. 3d 404, 409-10 (E.D. Pa. 2019); *Vogel v. W. T. Grant Co*. (1974) 458 Pa. 124, 132–133 ("While four persons, three relatives and one employer, were contacted in connection with the Vogel account, even notification of this small group does not, in this case, constitute publication.").

*Pub. Co.* (Pa. Super. Ct. 1984) 335 Pa.Super. 141, 153–154. Pennsylvania courts have long held

that information voluntarily provided without assurances of secrecy is not private and cannot

support an invasion of privacy claim. Thus, in *Steinberg v. CVS Caremark Corp.* (E.D. Pa. 2012)

899 F.Supp.2d 331, the District Court dismissed plaintiffs' privacy claim alleging that defendant

shared pharmacy prescription information with third parties, where plaintiffs did not allege they

relied on representations regarding how the information would be used. The court explained:

> The plaintiffs acknowledge that they voluntarily disclosed the information later
> disseminated by the defendants, and argue that their claim is premised not on the
> receipt of that information but instead on its sale to third parties. [citation]. This
> argument is unavailing. In Pennsylvania, liability for intrusion upon seclusion
> cannot exist where a defendant legitimately obtains information from a plaintiff.
> [citation]. This is so even where those facts voluntarily offered are later disclosed
> to a third party, even by such highly visible means as newspaper publication.

*Id.*, 341-343. *See also Harris*, 335 Pa.Super. at 154 (rejecting privacy claim based upon

newspaper publication of welfare application on grounds that plaintiff "voluntarily exposed the

facts to the Board of Assistance and the Department"); *Com. v. Diego* (Pa. Super. Ct. 2015) 119

A.3d 370, 378 (no expectation of privacy in text messages sent to informant and later turned over

to police, explaining "[w]hen an individual sends a text message, he or she should know that the

recipient, and not the sender, controls the destiny of the content of that message once it is

received."); *Com. v. Proetto* (Pa. Super. Ct. 2001) 771 A.2d 823, 831, *aff'd* (2003) 575 Pa. 511

(no expectation of privacy in text messages to 15 year old girl given to police, explaining that

"[b]ecause E.E. received the e-mail messages and could forward them to anyone, Appellant had

no reasonable expectation of privacy in them."). Here, plaintiff alleges that she knowingly and

voluntarily shared identification and transaction information with Famous Footwear without any

assurances as how the data would be used or with whom the data would be shared. Though she

says she did not expect the information would be shared with a third party service provider, she

does not allege that the sales associate ever told her it would not share her data, and her

12

subjective expectation that data entered into a computer system would not be viewed by anyone other than the sales associate who entered it is patently unreasonable.

Equally important, even if information knowingly and voluntarily provided to a retailer could be deemed a private concern, a "fundamental requirement" of a common law invasion of privacy claim is that the conduct be highly offensive to a reasonable person. *Boring*, 362 Fed.App'x. at 279. But courts have routinely found that the routine collection of consumer information like that at issue here does not qualify as highly offensive. *See, e.g., In re Nickelodeon Consumer Privacy Litigation* (3d Cir. 2016) 827 F.3d 262, 295 (routine collection for business purposes not unlawful), citing *In re DoubleClick Inc. Privacy Litig., 154 F.Supp.2d 497, 519 (S.D.N.Y. 2001)* ("DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (allegations defendant disclosed "unique device identifier number, personal data, and geo-location information from Plaintiffs' iDevices" did not constitute an egregious breach of social norms); *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1151-52 (C.D. Cal. 2013) (collecting ZIP codes during credit card transactions created "no actionable violation under state or common law privacy rights"), *aff'd, 635 F. App'x 351* (9th Cir. 2015). Indeed, the bar to state a common law invasion of privacy claim is so high that "[e]ven disclosure of personal information, including social security numbers… does not constitute an egregious breach of the social norms…." *Low v. LinkedIn Corp.* (N.D. Cal. 2012) 900 F.Supp.2d 1010, 1025 (*citing Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd, 380 F. App'x 689* (9th Cir. 2010) (theft of laptop containing job applicant social security numbers not egregious breach of privacy)).

Importantly, those courts holding that a business' collection of consumer data was sufficiently outrageous to constitute an invasion of privacy have done so where data was collected despite an express promise not to collect it, or where the defendant engaged in otherwise "duplicitous tactics." Thus, in *Nickelodeon*, the Third Circuit held that Viacom's use of tracking cookies on a children's website alleged an invasion of privacy where "Viacom's promise not to collect 'ANY personal information' from children itself created an expectation of privacy with respect to browsing activity on the Nickelodeon website." 827 F.3d at 294. In contrast to the "duplicitous tactics" used by Viacom, however, the court found that Google's use of "third-party cookies on Nick.com in the same way that it deploys cookies on myriad others websites,… does not strike us as sufficiently offensive…." *Id.*, 294. *See also In re Google Inc. Cookie Placement Consumer Privacy Litigation* (3d Cir. 2015) 806 F.3d 125, 153 ("A reasonable factfinder could conclude that the means by which defendants allegedly accomplished their tracking, i.e., by way of a deceitful override of the plaintiffs' cookie blockers, marks the serious invasion of privacy contemplated by California law.")

Other courts are in accord. For example, *In re Facebook Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), the Ninth Circuit found that allegations Facebook collected "enormous" amounts of browsing history after users had logged out of Facebook, despite assurances that it would not collect such data, were sufficient to constitute invasion of privacy. Similarly, in *In re Google Location History Litigation*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021), the court found allegations that Google amassed "a vast and comprehensive store of highly valuable geolocation data which it has and continues to commercially exploit," and continued to track geolocation data after the user turned off the location history, despite "assur[ing] users that 'the places you go are no longer stored,'" were sufficiently egregious. 514 F. Supp. 3d at 1151.

14

In contrast, in *In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019), the court found no invasion of privacy where Google "only tracked and collected data during use of Google services").

Here, Caruso-Davis does not allege that Famous Footwear told her it would not collect her information and did it anyway, or otherwise engaged in duplicitous tactics. Indeed, she alleges that she was asked for her information and she provided it, and does not allege that she inquired about its use or was given any assurances. That she subjectively believed that data provided to a retailer and entered into its computer system would never be shared with a third party does not create an expectation of privacy and does not render the alleged sharing of that data with a service provider for the purpose of fraud prevention outrageous or offensive; especially where nothing about that sharing caused her any actual, non-speculative harm. Her claims allege nothing more than the widely recognized and accepted collection and use of data for business purposes which courts have routinely found does not allege a cognizable injury.

## IV.    CONCLUSION

Because Caruso-Davis fails to allege either tangible harm or facts sufficient to meet the fundamental requirements of a common law invasion of privacy, she lacks Article III standing and her claims must be dismissed. And because no other plaintiff aims allegations at the Caleres Defendants, the other plaintiffs similarly lack standing as to them. Finally, because the evidence establishes that Caruso-Davis received a full refund and she cannot allege that she was actually denied a future return, she cannot remedy the deficiencies in her allegations and thus her claims should be dismissed with prejudice.

Dated:  January 3, 2022                        Respectfully submitted

15

BRYAN CAVE LEIGHTON PAISNER LLP

/s/ Daniel T. Rockey

Daniel T. Rockey (CA 178604)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4070
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
Email: daniel.rockey@bclplaw.com

Colin P. Snider (MO 72137)
211 N. Broadway, Suite 3600
Saint Louis, Missouri 63102
Telephone: (314) 259-2316
Facsimile : (314) 259-2020
Email: colin.snider@bclplaw.com

Counsel for Caleres, Inc. and BG Retail, LLC

16

## **[PROPOSED] ORDER DISMISSING CLAIMS**

Having considered Defendants' Caleres, Inc. and BG Retail, LLC's *Motion to Dismiss Plaintiff's Class Action Complaint Under Fed. R. Civ. P. 12(b)(1)*, the Declaration of Thomas Burke [ECF No. 54, #3], and such other evidence and argument presented to the Court, and with good cause appearing, the Court dismisses the Plaintiffs' claims against Defendants Caleres, Inc. and BG Retail, LCC with prejudice.

Dated:  February ___, 2022

_____

Hon. Cathy Bissoon

## CERTIFICATE OF SERVICE

I, Daniel T. Rockey, hereby certify that this document was electronically filed and served using the Court's CM/ECF system on January 3, 2021.

/s/ *Daniel T. Rockey*
Daniel T. Rockey