# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WILLIAM HANNUM, SEAN FREDERICK, OLGA MARYAMCHIK, VICTORIA CARUSO-DAVIS, SUSANA GUEVARA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE RETAIL EQUATION, INC., APPRISS INC., ADVANCE AUTO PARTS, INC., ADVANCE STORES COMPANY, INCORPORATED, BEST BUY CO., INC., BEST BUY PURCHASING LLC, BEST BUY STORES, L.P., BUY BUY BABY, INC., CALERES, INC., BG RETAIL, LLC, and DICK'S SPORTING GOODS, INC.,<br><br>Defendants. | Civil Action No. 2:21-CV-00997-CB |

**PLAINTIFF SEAN FREDERICK'S OPPOSITION TO DEFENDANT BEST BUY CO., INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD......................................................................................... 2

    A.  Background ............................................................................................. 2

    B.  The Motion's Evidentiary Record ......................................................... 3

        1.  No Notice During Enrollment...................................................... 3

        2.  No Notice During Subsequent Purchases or On the Receipt ...................... 4

III. APPLICABLE LEGAL STANDARDS ............................................................. 6

    A.  Pennsylvania Law Applies to Whether Plaintiff and Best Buy Agreed to Arbitrate ................................................................................. 7

    B.  Legal Standard Under Pennsylvania Law .............................................. 9

IV. ARGUMENT...................................................................................................... 9

    A.  Plaintiff Did Not Enter Into an Agreement to Arbitrate When He Enrolled in My Best Buy Program in 2016 ...................................................... 9

    B.  Plaintiff Did Not Enter Into an Agreement to Arbitrate at Any Time After He Enrolled in 2016 ................................................................... 14

    C.  The Arbitration Clause in the 2016 My Best Buy Terms Does Not Cover Plaintiff's Claims in This Action ........................................................ 14

V.  CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Anthony Int'l., L.P.*,
341 F.3d 256 (3d Cir. 2003)............................................................................................. 7

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009)............................................................................................. 9

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)............................................................................................. 9

*Camp Ne'er Too Late, LP v. Swepi, LP*,
185 F. Supp. 3d 517 (M.D. Pa. 2016) ............................................................................ 12

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional
Agreement Nos. 950548, 950549, 950546*,
584 F.3d 513 (3d Cir. 2009)............................................................................................. 7

*Emmaus Mun. Auth. v. Eltz*,
204 A.2d 926 (Pa. 1964) ............................................................................................... 7, 9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995).......................................................................................................... 7

*Gay v. CreditInform*,
511 F.3d 369, 388 (3d Cir. 2007)..................................................................................... 8

*Goldstein v. Depository Trust Co.*,
717 A.2d 1063 (Pa. Super. Ct. 1998)............................................................................... 9

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000)............................................................................................. 2

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010).......................................................................................................... 7

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020)......................................................................... 9, 12

*Hite v. Lush Internet Inc.*,
244 F. Supp. 3d 444 (D.N.J. 2017) .................................................................................. 8

*Hutt v. Xpressbet, LLC*,
No. 20-cv-494, 2020 WL 2793920 (E.D. Pa. May 29, 2020)........................................... 8

*In re Domestic Drywall Antitrust Litig.*,
399 F. Supp. 3d 280 (E.D. Pa. 2019) .............................................................................. 8

*Jacobsen Gravel Co. v. IronPlanet, Inc.*,
No. 16-cv-2619 (RHK/LIB), 2016 WL 10879837 (D. Minn. Nov. 10, 2016) ................. 2

*James v. Global TelLink Corp.*,
    852 F.3d 262 (3d Cir. 2017)........................................................................................ 12

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
    560 F.3d 156 (3d Cir. 2009).................................................................................. 6, 7, 9

*Matreale v. New Jersey Dep't of Military & Veterans Affairs*,
    487 F.3d 150 (3d Cir. 2007)......................................................................................... 6

*Meyer v. Uber Techs. Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................................... 9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.3d 884 (3d Cir. 1977)........................................................................................ 2

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ..................................................................... 10, 11, 12

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)....................................................................................... 12

*Quiles v. Fin. Exch. Co.*,
    879 A.2d 281 (Pa. Super. Ct. 2005).......................................................................... 7

*Siebert v. Amateur Athletic Union of the United States, Inc.*,
    422 F. Supp. 2d 1033 (D. Minn. 2006)................................................................... 10

*Trippe Mfg. Co. v. Niles Audio Corp.*,
    401 F.3d 529 (3d Cir. 2005)........................................................................................ 7

*Turicentro, S.A. v. American Airlines, Inc.*,
    303 F.3d 293 (3d Cir. 2002)........................................................................................ 2

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960).................................................................................................... 7

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989).................................................................................................... 7

*Woodside v. Sch. Dist. of Phila. Bd. of Educ.*,
    248 F.3d 129 (3d Cir. 2001)........................................................................................ 6

*Zabokritsky v. JetSmarter, Inc.*,
  No. 19-cv-273, 2019 WL 2563738 (E.D. Pa. June 20, 2019).................................. 10

**Statutes**

9 U.S.C.
    § 3.................................................................................................................................. 2

## I.    INTRODUCTION

Defendant Best Buy Company, Inc.'s ("Best Buy") Motion to Compel Individual Arbitration and to Dismiss (the "Motion" or "Mot.") (ECF No. 60) must be denied because it fails to establish that the parties agreed to arbitrate their disputes. *First*, Plaintiff Sean Frederick ("Plaintiff" or "Frederick") could not have consented to arbitration because he had no access to the terms when he clicked "Yes, Enroll" on a screen invitation on the signature pad at the cash register that merely said "Program Terms available at BestBuy.com/MyBestBuy." *Second*, Plaintiff was not informed at the time of enrollment that, by enrolling, he was agreeing to the Program Terms and, for this reason also, he could not have assented to the Terms. *Third*, because Plaintiff was not informed at the time of his enrollment that the Terms of the Program included an arbitration provision, the arbitration provision is not enforceable. *Fourth*, even if Plaintiff was told "You may ask an associate for the full terms" in the midst of a purchase transaction, such an arrangement would not provide reasonable notice of the terms.

Finally, it is indisputable that Plaintiff's claims in this action are not within the scope of the arbitration clause in effect at the time of his enrollment in the Program. Best Buy misleadingly argues that "the arbitration agreement Mr. Frederick accepted encompasses 'any dispute with or claim against Best Buy arising out of or relating in any way to any products or services sold or distributed by Best Buy including . . . the sales practices for such products and services.'" Mot. at 16. Without indicating (by ellipsis or otherwise) that Best Buy has quoted only part of the sentence, it omits the highly significant clause that directly follows the quoted portion: " . . . *and* (2) you received points, could have received points, or you applied points or a certificate toward such transaction[.]" Declaration of Susan Fletcher ("Fletcher Decl.") (ECF No. 60-3), Ex. G ¶ 11 (emphasis added).

Best Buy does not—and could not—claim that the attempted merchandise return or exchange giving rise to Plaintiff's claims was a transaction on which Plaintiff received or could have received points in the Best Buy Rewards Program. Thus, the plain language of the arbitration provision leaves no doubt that Plaintiff's claims concerning Best Buy's unauthorized sharing with

Defendant The Retail Equation ("TRE") of Plaintiff's personal data in connection with his attempted return, and Best Buy's improper and unwarranted refusal to accept the return or exchange, are not within the scope of Rewards Program arbitration clause.[1]

## II.      LEGAL STANDARD

Defendants' Motion presents a facial challenge to the Court's subject matter jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977)). In reviewing a facial attack, which addresses a deficiency in the pleadings, the court must only consider the allegations on the face of the complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff. *Gould Elecs. Inc.*, 220 F.3d at 176; *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 (3d Cir. 2002).

### A.      Background

Best Buy is a retailer of consumer electronics. At some or all of its stores, Best Buy utilizes services and information provided by TRE to determine, *inter alia*, whether to accept or reject merchandise returns and exchanges from Best Buy's individual customers at the time the customer attempts to make the return or exchange. TRE claims to "use[] statistical modeling and analytics to detect fraudulent and abusive behavior when returns are processed at retailers' return counters." Complaint ("Compl.") ¶ 16 (ECF No. 1). As part of its contractual relationship with TRE, Best Buy collects large amounts of data about its customers, including details of customers' shopping, purchase and payment histories, as well as unique personal identification information such as name, date of birth, race, sex, full address and pictures from government-issued photo IDs. *Id*. ¶¶ 20-23.

---

[1] If the Court is inclined to grant Best Buy's motion notwithstanding the opposition presented herein, Plaintiff's action should be stayed and not dismissed. *See* 9 U.S.C. § 3 (In any lawsuit "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *see also Jacobsen Gravel Co. v. IronPlanet, Inc.*, No. 16-cv-2619 (RHK/LIB), 2016 WL 10879837, at *4 (D. Minn. Nov. 10, 2016) ("Generally speaking, however, the statute requires a federal district court to stay an action pending arbitration, rather than to dismiss it.") (internal quotation marks omitted).

Best Buy then shares the collected information with TRE without the customers' knowledge or consent. *Id*. ¶ 24.

Plaintiff alleges that, without his knowledge or consent, Best Buy transmitted to TRE certain information pertaining to a merchandise return or exchange that Plaintiff attempted to make at one of the Best Buy's stores on or about March 19, 2018, and that his return or exchange was then declined by Best Buy based upon the recommendation of TRE. *Id*. ¶¶ 51-61. Plaintiff alleges that Best Buy's provision of his personal data to TRE and/or Best Buy's denial of Plaintiff's merchandise return or exchange: (i) constituted an unlawful invasion of privacy under the common law; (ii) violated Section 201-1, *et seq*. of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and (iii) resulted in the unjust enrichment of Best Buy. *Id*. ¶¶ 113-119, 128-141, 155-161. In the Motion, Best Buy seeks to bar Plaintiff Frederick from having his claims adjudicated in court and require him, instead, to pursue his claims in arbitration based on the arbitration clause in the My Best Buy Terms that Best Buy claims Plaintiff agreed to when he enrolled in the "My Best Buy" rewards program on November 29, 2016, in person at a Best Buy store in Pittsburgh, Pennsylvania.

## B.    The Motion's Evidentiary Record

Best Buy's counsel's argument sometimes confuses the facts presented by the evidence, the Declaration of Lauren Wallen ("Wallen Decl.") (ECF No. 60-1) and the Fletcher Declaration. Upon careful inspection, the Declarations reveal the following facts:

### 1.    No Notice During Enrollment

Plaintiff enrolled in the My Best Buy Rewards Program in person at Best Buy store #585 located at 4801 McKnight Rd., Pittsburgh, PA 15237 on November 29, 2016. Wallen Decl., ¶¶ 3, 11. In the course of making his purchase, using the signature pad at the in-store cashier, Plaintiff was invited to enroll in the My Best Buy program. *Id*., ¶ 4. The only reference to "Program Terms" appeared at the bottom of the "invitation" screen, where the following text appeared: "Program Terms available at BestBuy.com/MyBestBuy." *Id*. This screen did *not* inform Plaintiff that he would be contractually bound by the Program Terms if he elected to enroll in the My Best Buy

3

Program, or that those Terms contained an agreement to give up his right to a jury and arbitrate any claim on an individual basis. Plaintiff was not directed or urged to review the Program Terms before (or after) enrolling in My Best Buy. Plaintiff was given no opportunity to review the Program Terms before enrolling in My Best Buy. Plaintiff was simply told that Program Terms were available at the Best Buy website, to which Plaintiff had no access at the time he was asked to enroll in the Program and presented with a button that read: "Yes, Enroll." This ended the enrollment procedure.

Screenshots of the BestBuy.com/MyBestBuy page as of November 14, 2016 are attached to the Declaration of Henry J. Kelston, submitted herewith, as Exhibit A. That page is highly cluttered with promotional ads, buttons and more than 60 hyperlinks. Some, but not all, of the hyperlinks become underlined if one hovers the mouse pointer over them. Only if one scrolled down several screens, one might have seen the phrase "See program terms" — a hyperlink to the terms — written in the smallest font used on the page. Even then, the page did not inform users that they would be agreeing to the Terms by enrolling in the My Best Buy program. [2]

There is no evidence that Best Buy presented the terms of the arbitration clause to Mr. Frederick in any way on November 29, 2016. Best Buy's 2016 Point of Sale Standard Operating Procedures, attached as Exhibit C to the Wallen Declaration, nowhere state that a customer enrolling in My Best Buy is to be provided a copy of the Program Terms or advised that enrollment in My Best Buy constitutes assent to the (unavailable) Program Terms, or is in any way to be advised of arbitration. There is no declaration from any competent witness that such terms were made available at the Pittsburgh, PA store on November 29, 2016 to Mr. Fletcher or anyone else in any way.

### 2.    No Notice During Subsequent Purchases or On the Receipt

Best Buy states that when a customer already enrolled in My Best Buy wants to earn points on a *subsequent* in-store purchase — in Mr. Fletcher's case, a purchase made after the original

---

[2] *See* https://web.archive.org/web/20161114233313/http://www.bestbuy.com/site/clp/my-best-buy/pcmcat309300050007.c?id=pcmcat309300050007.

4

purchase and enrollment on November 29, 2016 — the customer is presented with a "Verify Your Information" screen that includes the statement: "By confirming, members agree to the My Best Buy Terms. You may ask an associate for the full terms." Wallen Decl., ¶ 6. But, again, there is no specific evidence that the Pittsburgh store in fact had hard copies of the terms and conditions to disseminate or made such terms available in any way on any of the dates on which Mr. Fletcher made subsequent purchases after November 29, 2016, to him or any other customer.

In the Introduction to its Motion, Best Buy claims that, during Plaintiff's enrollment in My Best Buy on November 29, 2016, "a screen was presented to him which read as follows: 'By confirming, members agree to the My Best Buy Terms.'" Mot. at 6. However, this statement is contradicted by the Factual Background section of the Motion, the Wallen Declaration (on which the Motion relies), and the quoted language itself.

In the Factual Background section of the Motion, Best Buy states that the information provided by the customer during the enrollment process "is initially used to create the My Best Buy account. This information is also verified (or changed) in each subsequent transaction through a screen which reads as follows: . . . 'By confirming, members agree to the My Best Buy Terms.'" *Id.* at 9. Thus, Best Buy admits that the quoted statement is not presented to customers during the enrollment process, but only in *subsequent transactions*. This is consistent with the Wallen Declaration, which also states that the personal information given by enrolling customers is "used to create the My Best Buy account" and "is also verified (or changed) in each subsequent transaction" through the screen containing the quoted language. Wallen Decl., ¶ 6. Thus, even if the Verify Your Information screen had been shown to Plaintiff during his enrollment process — and the evidence indicates that it was not — the statement purporting to indicate agreement to the program terms would not have applied to him for two reasons: first, because he had not been given access and, second, because his My Best Buy account had not yet been created and, thus, he was not a "member" at that time.

Furthermore, Best Buy's assertion that "[s]ince November 2016, the My Best Buy Terms have been available to customers at Best Buy store registers and printed by salespeople at

customers' requests" (Fletcher Decl., ¶ 4) is ambiguous as to whether the terms were available on November 29, 2016, when Plaintiff enrolled, or only "since November 2016," (i.e., beginning in December 2016 or some time thereafter). Further, Best Buy provides no documentation regarding the change in its policies and procedures regarding the availability of the full My Best Buy Terms at store registers, although such documentation would surely exist. Finally, to the extent Best Buy asserts that it provided notice through the receipt during any of the transactions, the only receipt Best Buy offers states nothing about arbitration, or even how to access the full My Best Buy Terms. Wallen Decl., Ex. A.[3]

Based on this evidence and for all the reasons explained below, Best Buy fails to meet its burden of establishing contract formation on the facts, and the Motion should be denied.

## III.   APPLICABLE LEGAL STANDARDS

Motions to compel arbitration are reviewed under the summary judgment standard. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 n.3 (3d Cir. 2009). A court will compel arbitration only when there is "no genuine issue of fact concerning the formation of the agreement to arbitrate." *Id.* at 159. In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. *Matreale v. New Jersey Dep't of Military & Veterans Affairs,* 487 F.3d 150, 152 (3d Cir. 2007); *Woodside v. Sch. Dist. of Phila. Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir. 2001). Thus, if the Court views any of the material facts regarding contract formation as being in dispute, Best Buy's motion must be denied.

"Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." *Granite Rock Co. v.*

---

[3] Best Buy's assertion that "Mr. Frederick's purchase receipt from that day provided the internet links (website address) to Best Buy's return policy and privacy policy" (Mot. at 9) is irrelevant to the present motion. The provisions of the return and privacy policies, and the extent to which Plaintiff may be bound by them, may be relevant to the merits of Plaintiff's claims in this action but are of no moment regarding the enforceability of the arbitration provision in the My Best Buy terms.

*Int'l Bhd. of Teamsters,* 561 U.S. 287, 299 (2010) (emphasis in original) (internal quotation marks and citation omitted). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). A motion to compel arbitration can only be granted if the court determines that: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis*, 560 F.3d at 160 (citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 283 n.3 (Pa. Super. Ct. 2005)).

It is well established that the Federal Arbitration Act ("FAA"), reflects a "strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). But this presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, 950546*, 584 F.3d 513, 527 (3d Cir. 2009). Agreements to arbitrate are upheld only where the parties have agreed to arbitrate in a "clear and unmistakable manner." *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964). It is also "well settled that where the dispute at issue concerns contract formation, the dispute is generally for the courts to decide." *Granite Rock Co.*, 561 U.S. at 296 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### A.    Pennsylvania Law Applies to Whether Plaintiff and Best Buy Agreed to Arbitrate

The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Courts generally "apply ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter (including arbitrability)." *Kaplan*, 514 U.S. at 944. In deciding which law should determine whether parties entered into a valid agreement to arbitrate, Federal courts

7

generally look to the law of the forum state. *Gay v. CreditInform*, 511 F.3d 369, 388 n.13 (3d Cir. 2007).

In this case, Pennsylvania law should apply because Pennsylvania is the forum in which this case was filed. Moreover, Plaintiff resides in Pennsylvania, and the transaction leading to Plaintiff's injury occurred in Pennsylvania. Indeed, Plaintiff attempted to return or exchange merchandise at a Best Buy location in Pennsylvania, and it was in the Pennsylvania store that Best Buy transmitted Plaintiff's identifying and transaction information to TRE (without Plaintiff's knowledge) and subsequently informed Plaintiff that his return or exchange had been declined based upon the recommendation of TRE. Compl. ¶¶ 50-61.

Best Buy contends that the choice-of-law provision in the My Best Buy Rewards Program Terms (the "Terms"), which prescribes the application of Minnesota law, governs this dispute. However, Best Buy ignores the fact that the choice-of-law provision is contained in the Terms and, thus, can only be effective if the parties entered into a contract including the Terms, the precise issue before the Court on this Motion. *See Hutt v. Xpressbet, LLC*, No. 20-cv-494, 2020 WL 2793920, at *5 n.5 (E.D. Pa. May 29, 2020) (citing *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 450 n.3 (D.N.J. 2017)) ("In determining whether a valid arbitration agreement exists in this case, the Court applies the law of the forum state" because "[i]t would be anomalous to apply a contract's choice of law provision unless it has first been ascertained that the disputed contract exists.").

Moreover, the party advocating the use of a foreign state's law bears the burden of identifying the conflict between the forum and that state's laws and establishing that the foreign state has an interest in having its law applied. *In re Domestic Drywall Antitrust Litig.*, 399 F. Supp. 3d 280, 306 (E.D. Pa. 2019). If the party fails to meet either of those burdens, the court may properly find Pennsylvania law applicable without further analysis. *Id.* at *307. Here, while Best Buy contends that Minnesota, rather than Pennsylvania, law applies, it has failed to identify any differences between Minnesota and Pennsylvania law and, indeed, asserts that "[n]o matter the applicable law, the outcome is the same[.]" Mot. at 15. Accordingly, the Court should apply Pennsylvania law to this dispute.

### B. Legal Standard Under Pennsylvania Law

Under Pennsylvania law, the party seeking arbitration bears "the burden of demonstrating that a valid agreement to arbitrate exists between the parties, and that the dispute is within the scope of the agreement." *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998). Contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). The Pennsylvania Supreme Court has held that an agreement to arbitrate cannot arise "by implication." *Emmaus*, 204 A.2d at 927. "[E]xplicit agreement is essential to the formation of an enforceable arbitration contract." *Kirleis*, 560 F.3d at 163. "'[M]ust have known' or 'should have asked' falls short of the standard required by Pennsylvania law that plaintiff *actually agree* to arbitrate her claims." *Id*. at 161 (emphasis in original).

"Although the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *Meyer v. Uber Techs. Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)). "[I]n assessing whether a party manifested an intent to enter a contract, the Court looks not to inward, subjective intent but, rather, to the 'intent a reasonable person would apprehend in considering the parties' behavior.'" *HealthplanCRM*, 458 F. Supp. 3d at 331-32 (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009)). As will be shown below, Plaintiff never even knew of the terms of the My Best Buy rewards program, let alone manifested an intent to be bound by those terms.

## IV. ARGUMENT

### A. Plaintiff Did Not Enter Into an Agreement to Arbitrate When He Enrolled in My Best Buy Program in 2016

When Plaintiff enrolled in the My Best Buy program in 2016, he could not have assented to the My Best Buy terms, including the arbitration clause therein, because he had no access to

9

those terms. As the Ninth Circuit explained:

> Contracts formed on the Internet come primarily in two flavors: "clickwrap" (or "click-through") agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014).

Best Buy's claim that the My Best Buy terms were presented to Plaintiff in 2016 at the time of enrollment in a "clickwrap agreement" (Mot. at 11) is blatantly and demonstrably false. A "clickwrap agreement" has two critical components: the website user must be presented with the relevant terms and conditions, and the user must click an "I agree" box after the terms are presented. *Nguyen*, 763 F.3d at 1176; *Zabokritsky v. JetSmarter, Inc.*, No. 19-cv-273, 2019 WL 2563738, at *3 (E.D. Pa. June 20, 2019). The screens presented to Plaintiff on the signature pad in the Best Buy store when he enrolled in My Best Buy in 2016 included neither of these essential elements. Plaintiff was not "presented with" the terms and conditions (or even a hyperlink to access them contemporaneously) and was not required to click on an "I agree" box upon enrollment. Wallen Decl. ¶ 5, Ex. D.

In *Siebert v. Amateur Athletic Union of the United States, Inc.*, 422 F. Supp. 2d 1033 (D. Minn. 2006), on which Best Buy primarily relies, the court granted the AAU's motion to compel arbitration where plaintiffs had been required to click a box on a page containing the following language (in bold type) in order to join the AAU:

> **I agree to be bound by the AAU Code as well as all AAU operating procedures and policies, including but not limited to: binding arbitration and the release and indemnity of the AAU.**

*Id.* at 1036. The plaintiffs also received and signed AAU membership cards containing exactly the same language. These facts so clearly and fundamentally distinguish *Siebert* from the present case that Best Buy's reliance on *Siebert* can only be viewed as careless or disingenuous.

Nor were the My Best Buy terms presented to Plaintiff at the time of enrollment as a "browsewrap agreement." In a browsewrap agreement, a website's terms and conditions of use are posted on the website via a hyperlink and "the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website— the user is agreeing to and is bound by the site's terms of service.'" *Nguyen*, 763 F. 3d at 1176. The My Best Buy enrollment screens satisfied neither element of a browsewrap agreement: the screens did not contain a hyperlink to the terms and did not advise Plaintiff that the terms were available in hard copy from a store employee. Even if one of the screens in the enrollment process had notified customers to "ask an associate for full terms," such a suggestion would not have constituted a reasonable opportunity for Plaintiff to review the terms. After having waited in line to get to the cashier, and after having proceeded through several screens of the purchase process, and the My Best Buy enrollment process, Plaintiff would have had to interrupt his purchase to ask the cashier for the full program terms. If hard copies of the terms were readily available to the cashier (a fact that Best Buy does not allege), Plaintiff would have had the option of holding up the line while he reviewed the printed terms, or terminating his purchase to review the terms, then, returning to the end of the line to begin the process anew. If printed terms were not readily available, Plaintiff's request would have required the cashier to obtain the terms from another source in the store. Thus, in the real world, the notion that "ask[ing] an associate for the full terms" in the midst of the customer's purchase as a valid method of providing notice of the terms to the customer is ludicrous. Moreover, Best Buy's 2016 Point of Sale Standard Operating Procedures contain no instructions regarding the provision of printed terms to customers. *See* Wallen Decl., Ex. C.

And, at no point during his enrollment in My Best Buy on November 29, 2016 was Plaintiff informed that, if he enrolled in My Best Buy, he would be contractually bound by program terms or that he would be agreeing to a mandatory arbitration provision. Wallen Decl., ¶ 3. Ms. Wallen claims that customers who already created My Best Buy accounts are required "in each *subsequent* transaction" to verify their personal information through a Verify Your Information screen, which

11

states: "By confirming, members agree to the My Best Buy Terms. You may ask an associate for the full terms." Wallen Decl., ¶ 6 (emphasis added). Although counsel's argument attempts to obfuscate this point, the Wallen Declaration nonetheless reveals that customers are not shown the Verify Your Information screen at the time they enroll in My Best Buy.

Even if the My Best Buy enrollment process were found (incorrectly) to constitute a browsewrap agreement, the terms would be unenforceable. "The Third Circuit has suggested that browsewrap agreements are enforceable if 'the terms are reasonably conspicuous on the webpage' so that the user can be fairly charged with 'constructive notice' that continued use will constitute acceptance of the agreement." *HealthplanCRM*, 458 F. Supp. 3d at 331 (quoting *James v. Global TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017)); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) ("In determining the validity of browsewrap agreements, courts often consider whether a website user has actual or constructive notice of the conditions.") (citation omitted); *Nguyen*, 763 F.3d at 1177 ("[T]he validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") Plaintiff had neither actual nor constructive knowledge of the My Best Buy terms at the time he enrolled in the program. Best Buy cannot enforce those terms against Plaintiff under either Pennsylvania or Minnesota law.[4]

*First*, Plaintiff could not agree to the terms because he had not been given access to them. *Second*, the statement reads "By confirming, *members* agree . . ." to the terms. Both the Motion and Wallen Declaration state that the personal information given at the time of enrollment is "used to create the My Best Buy account." Mot. at 9; Wallen Decl., ¶ 6. If the Verify Your Information screen was shown to Plaintiff during his enrollment process — and the evidence indicates it was

---

[4] Any argument that the program terms were incorporated by reference in the signature pad screens Plaintiff saw at the time of enrollment would fail as well. Incorporation by reference "requires a reference in one document to the terms of another. Moreover, the incorporating document must not only refer to the incorporated document, it must bring the terms of the incorporated document into itself as if fully set out." *Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517, 547 (M.D. Pa. 2016) (citations omitted). Best Buy's signature pad screen accomplishes nothing of the sort.

12

not — his My Best Buy account had not yet been created, he was not a "member" of the program, and thus the statement of agreement to the terms did not apply to him.

Best Buy claims that "[s]ince November 2016, the My Best Buy Terms have been available to customers at Best Buy store registers and printed by salespeople at customers' requests." Mot. at 11. This statement obviously skirts the issue of whether Best Buy even claims the terms were available to customers during November 2016, when Plaintiff enrolled. Moreover, notwithstanding the remarkable coincidence that Best Buy claims to have made My Best Buy terms available to customers beginning around the time of Plaintiff's enrollment, Best Buy provides no documentary evidence of this significant change in its policies and procedures: no announcement of the change to store employees, no procedures for employees to follow when a customer asked for the full program terms. As evidenced by the detailed procedures in Best Buy's 2016 Point of Sale Standard Operating Procedures (Wallen Decl., ¶ 4 & Ex. C) regarding enrollment of customers in My Best Buy, it defies belief that Best Buy would have no written documentation to support its claim that the My Best Buy terms have been available to customers at store registers since November 2016.[5]

For all of these reasons, Plaintiff cannot be deemed to have assented to the My Best Buy terms when he enrolled in the program on November 29, 2016.

### B. Plaintiff Did Not Enter Into an Agreement to Arbitrate at Any Time After He Enrolled in 2016

Best Buy contends that Plaintiff "reconfirmed his agreement to the program's terms, including the agreement to arbitrate disputes, in multiple transactions that followed his initial enrollment" (Mot. at 6), specifically, when he "made numerous purchases (as well as returns) after his enrollment in the My Best Buy Rewards Program" (*id.* at 11). "The transaction history

---

[5] In any event, as further explained *supra*, an invitation to a customer to ask an associate for the terms in the midst of a purchase transaction does not provide the customer with reasonable notice of the terms.

associated with his My Best Buy account shows that he had at least six such transactions involving purchases after his enrollment, and he received points for those purchases." *Id.*

Best Buy's claim that Plaintiff reconfirmed his agreement to the My Best Buy terms, including the agreement to arbitrate disputes, when he made these purchases and returns after his enrollment fails for an obvious and fundamental reason: Mr. Frederick could not have agreed to an arbitration provision at the times when he purportedly made purchases at Best Buy after November 29, 2016 because he did not have actual or constructive knowledge of the terms in effect on the dates of those purchases. As explained *supra* at § IV.A., Best Buy did not provide reasonable notice of terms by suggesting that a customer could "ask an associate for full terms" in the midst of the customer's purchase transaction. Nor has Best Buy provided evidence to verify that the full My Best Buy terms were, in fact, available from associates at all times since November 2016.

There is no evidence at all with respect to any of the policies or procedures of the specific stores in which Mr. Frederick allegedly made purchases on any of the dates establishing that hard copies of the terms of conditions were in fact made available. Exhibit C to the Wallen Declaration, which purports to be a true and correct copy of the relevant excerpts from Best Buy's 2016 Point of Sale Standard Operating Procedures, includes detailed written procedures for store employees enrolling customers in My Best Buy but no mention of the availability of the My Best Buy terms from those store employees.

For all of these reasons, Best Buy fails to carry its burden to show that the parties entered into a valid arbitration agreement at any time after November 29, 2016.

### C.   The Arbitration Clause in the 2016 My Best Buy Terms Does Not Cover Plaintiff's Claims in This Action

As explained in detail above, Plaintiff never assented to the My Best Buy terms, either in 2016 or thereafter. In the unlikely event that Plaintiff is found to be bound by those terms, Best Buy's motion to compel arbitration would still fail.

In the 2016 terms, the arbitration clause plainly does not cover Plaintiff's claims. Paragraph 11 of the terms provides, in relevant part:

14

IN CONSIDERATION FOR PARTICIPATING IN THE PROGRAM, YOU AGREE THAT IF (1) YOU HAVE ANY DISPUTE WITH OR CLAIM AGAINST BEST BUY ARISING OUT OF OR RELATING IN ANY WAY TO ANY PRODUCTS OR SERVICES SOLD OR DISTRIBUTED BY BEST BUY INCLUDING, BUT NOT LIMITED TO, THE ADVERTISING OF OR THE SALES PRACTICES FOR SUCH PRODUCTS AND SERVICES, AND (2) YOU RECEIVED POINTS, COULD HAVE RECEIVED POINTS, OR YOU APPLIED POINTS OR A CERTIFICATE TOWARD SUCH TRANSACTION, THEN YOU WILL RESOLVE DISPUTES OR CLAIMS BY BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY.

Fletcher Decl., Ex. G.

The transaction giving rise to Plaintiff's claim was an attempted merchandise return or exchange that was declined by Best Buy. Compl. ¶¶ 51, 58. Best Buy does not claim that Plaintiff "received points, or could have received points" even on a successful return or exchange, let alone a declined transaction. Nor does Best Buy attempt to explain why Plaintiff's claim is not excluded from arbitration by the language limiting arbitration to disputes arising from a transaction on which a customer received or could have received points. Unfortunately for Best Buy, ignoring adverse language does not make it disappear. There is no basis on which the Court can conclude that the arbitration clause in the 2016 My Best Buy terms covers Plaintiff's claims in this action.

For this reason as well, Best Buy's motion to compel arbitration should be denied.

## V.    CONCLUSION

For all of the above reasons, Best Buy's Motion to Compel Arbitration should be denied in its entirety.


DATED: February 14, 2022                    Respectfully submitted,

                                            /s/ Andrew W. Ferich.
                                            Andrew W. Ferich
                                            aferich@ahdootwolfson.com
                                            **AHDOOT & WOLFSON, PC**
                                            201 King of Prussia Road, Suite 650

15

Radnor, PA 19087
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Tina Wolfson*
twolfson@ahdootwolfson.com
Theodore Maya*
tmaya@ahdootwolfson.com
Bradley K. King*
bking@ahdootwolfson.com
Christopher Stiner*
cstiner@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Cornelius P. Dukelow*
Oklahoma Bar No. 19086
cdukelow@abingtonlaw.com
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)

Benjamin F. Johns
BFJ@chimicles.com
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH, LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610.642.8500 (*telephone)*
610.649.3633 (*facsimile*)

**pro hac vice* to be filed

*Counsel to Plaintiffs and the Proposed Class*

16

**CERTIFICATE OF SERVICE**

I, Andrew W. Ferich, hereby certify that this document was electronically filed and served

using the Court's CM/ECF system on February 14, 2022.


/s/ Andrew W. Ferich
Andrew W. Ferich

17