**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

WILLIAM HANNUM, et al.,

                 Plaintiffs,

        v.

THE RETAIL EQUATION, INC., et al.,

                Defendants.

Civil Action No. 2:21-cv-997

Hon. Cathy Bissoon

**REPLY IN SUPPORT OF DICK'S SPORTING GOODS, INC.'S
MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT..................................................................................................................1

   A.    Plaintiff Fails to Refute that She Assented to Arbitration Agreements
         with DSG. ..........................................................................................................1

         1.    DSG's Undisputed Evidence Shows Plaintiff Assented to the
               2015 Terms. ............................................................................................2

         2.    DSG's Undisputed Evidence Shows Plaintiff Assented to the
               2017 Terms. ............................................................................................4

   B.    The Court Should Compel Arbitration Because the Parties' Agreement
         Delegates All Other Questions to the Arbitrator, and These Disputes Fall
         Within its Scope...................................................................................................5

III.  CONCLUSION................................................................................................................5

Case 2:21-cv-00997-CB   Document 86   Filed 03/14/22   Page 3 of 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bush v. Comcast Cable Commc'ns Mgmt.*,
2020 WL 4199077 (W.D. Pa. July 22, 2020) ...............................................................2

*Coulter v. Experian Info. Sols. Inc.*,
2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ................................................................2, 3

*Dohrmann v. Intuit, Inc.*,
823 F. App'x (9th Cir. 2020) ........................................................................................3

*Matthews v. Gucci*,
2022 WL 462406 (E.D. Pa. Feb. 15, 2022) ...................................................................2

*McKee v. Audible, Inc.*,
2017 WL 7388530 (C.D. Cal. Oct. 26, 2017).................................................................2

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. May 15, 2020)...............................................................4, 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...........................................................................................................5

*Mucciariello v. Viator, Inc.*,
2019 WL 4727896 (D.N.J. Sep. 27, 2019) ...................................................................3

*Rodman v. Safeway Inc.*,
2015 WL 604985 (N.D. Cal. Feb. 12, 2015) .................................................................5

*Sacchi v. Verizon Online*,
2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)...................................................................5

*Saechow v. Phila. Acad. Health Sys., LLC*,
2021 WL 1210008 (E.D. Pa. Mar. 31, 2021)..................................................................2

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)..........................................................................................3

*Stephenson v. AT&T Servs., Inc.*,
2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) .................................................................5

ii

## I.    INTRODUCTION

To determine whether to grant DSG's motion to compel arbitration, the Court must examine two questions: (1) whether Plaintiff assented to arbitration, and, if so, (2) whether challenges to the enforceability and scope of that agreement are reserved for the arbitrator or the Court.  On the first question, DSG's Motion presents undisputed evidence that Plaintiff assented to arbitration on multiple occasions.  On the second, controlling Supreme Court precedent and unmistakable delegation clauses in the arbitration agreements require the arbitrator, rather than the Court, to decide Plaintiff's enforceability and scoping challenges.  Having failed to dispute or present <u>any</u> facts to contradict DSG's evidence, Plaintiff must be compelled to arbitrate her claims.

## II.    ARGUMENT

### A.    Plaintiff Fails to Refute that She Assented to Arbitration Agreements with DSG.

Plaintiff admits she must create a genuine dispute of material fact as to her assent to DSG's Terms to defeat DSG's Motion. *See* ECF No. 73 ("Opp.") at 8–9.  However, she offers <u>no facts</u> to contradict evidence that: (1) she made an online purchase in July 2016 by clicking the "Submit Order" button adjacent[1] to the statement "[b]y placing your order, you affirm that you agree to our Terms and Conditions and Privacy Policy"; (2) DSG's January 2017 email notified her of updates to its Terms and highlighted a "key" change to the arbitration section, and she declined to exercise an opt-out option; and (3) she clicked on subsequent DSG emails and browsed DSG's website on multiple occasions between January 2017 and 2021.  She does not dispute any of those facts.

Rather than submitting a declaration or evidence, Plaintiff simply misrepresents the facts.  She materially distorts DSG's checkout flow process by creating a version in the Opposition that

---

[1] Despite Plaintiff's limited view of "adjacent," Opp. at 4 n.3, the term means "being in close proximity."  https://www.merriam-webster.com/dictionary/adjacent (last visited Mar. 11, 2022).

incorporates boxes, markups, and colors that Plaintiff would not have seen as part of her July 2016 transaction. *Compare* Opp. at 4, *with* ECF No. 63-1, Ex. A. She also misquotes DSG's evidence supporting arbitration, such as referring to DSG's "Confirm Purchase" button, Opp. at 10, which is not what the exhibit shows. *See* ECF No. 63-1, Ex. A.

Unable to dispute DSG's evidence, Plaintiff resorts to baseless objections to it.[2] But courts routinely accept exactly this type of evidence in reviewing arbitration motions, and the objections do not create a factual dispute. *See Matthews v. Gucci*, 2022 WL 462406, at *4 (E.D. Pa. Feb. 15, 2022) (compelling arbitration where plaintiff "did not come forward with any factual evidence" to contest the agreement). Moreover, because there are no factual disputes, there is no need to address Plaintiff's half-hearted request for discovery and delay. *See Saechow v. Phila. Acad. Health Sys., LLC*, 2021 WL 1210008, at *10–11 (E.D. Pa. Mar. 31, 2021).

    **1.     DSG's Undisputed Evidence Shows Plaintiff Assented to the 2015 Terms.**

Plaintiff simply ignores DSG's in-circuit case law showing she had reasonable notice of the Terms. *See* ECF No. 63 ("Mot.") at 9–12. Instead, the Opposition recycles arguments Plaintiff raised against DSG in a prior matter, including by erroneously attributing cases to DSG that DSG did not cite here. *See* Opp. at 14 (citing, for example, *Bush v. Comcast Cable Commc'ns Mgmt.*, 2020 WL 4199077, at *9 (W.D. Pa. July 22, 2020)).

---

[2] Plaintiff's objections to DSG's evidence are meritless, as explained further in DSG's Responses to Plaintiff's Evidentiary Objections. ECF Nos. 84, 85. Moreover, when deciding arbitration motions, courts routinely consider the type of evidence DSG submitted. *See, e.g., Coulter v. Experian Info. Sols. Inc.*, 2021 WL 735726, at *1 n.1 (E.D. Pa. Feb. 25, 2021) (reviewing declaration and attached checkout flow process and terms submitted in support of arbitration motion); *see also McKee v. Audible, Inc.*, 2017 WL 7388530, at *3–4 (C.D. Cal. Oct. 26, 2017) (overruling evidentiary objections in connection with Audible's submission of website flows to support arbitration motion).

Plaintiff quibbles with the notice she received of DSG's Terms when she made her 2016 purchase on DSG's website.  However, the decisions cited in the Opposition and in DSG's Motion support enforcing arbitration agreements under similar facts.  First, DSG provided notice in a short statement similar to formats used in other cases where notice was deemed reasonable. *See, e.g.*, *Mucciariello v. Viator, Inc.*, 2019 WL 4727896, at *4–7 (D.N.J. Sep. 27, 2019). Second, contrary to Plaintiff's suggestion (and spurious citation to Wikipedia), there is no rule that DSG's hyperlinks be in a particular color or underlined in order to be found sufficient to provide notice.  *See, e.g.*, *Selden v. Airbnb, Inc.*, 4 F.4th 148, 157 (D.C. Cir. 2021) (holding red hyperlinks were conspicuous).  Third, DSG's use of a "Submit Order" button, rather than an "I agree" button, was akin to buttons used in other cases where notice was reasonable.  *See Coulter*, 2021 WL 735726, at *5 ("Submit Secure Order").  Further, Plaintiff offers no support for her view that any users were confused that DSG's "Terms and Conditions" hyperlink sent them to a "Terms of Use" page.  *See Dohrmann v. Intuit, Inc.*, 823 F. App'x, 482, 484 (9th Cir. 2020).

Plaintiff's sparse case law does not change the conclusion that she had notice of, and assented to, the Terms. In *Wilson v. Huuuge, Inc.*, the terms were "buried twenty thousand leagues under the sea" and not hyperlinked, users did not need to visit the page with the alleged notice, and there was no indication users would be bound by terms.  944 F.3d 1212, 1214, 1221 (9th Cir. 2019).  Nor is *Nicosia v. Amazon.com, Inc.* analogous to DSG's case, as the order page there involved "between fifteen and twenty-five" hyperlinks with "various text [] displayed in at least four font sizes and six colors . . . alongside multiple buttons and promotional [ads]." 834 F.3d 220, 237 (2d Cir. 2016).  Neither case involved facts similar to those at issue.

Therefore, because none of Plaintiff's critiques creates a dispute of whether she was on notice of DSG's Terms when she completed her 2016 purchase, her claims must be arbitrated.

### 2.   DSG's Undisputed Evidence Shows Plaintiff Assented to the 2017 Terms.

Although not necessary to compel arbitration, DSG's evidence also establishes that Plaintiff assented to the 2017 Terms in more than one instance through her continued use of the DSG's website.

First, Plaintiff's own case law dictates that because the 2015 Terms clarified that they were subject to modification, and continued use of DSG's website constituted assent to the changes, she assented to the 2017 Terms through her continued use of DSG's website after those modifications. *See Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *6, 8 (N.D. Ill. May 15, 2020) (concluding plaintiff assented to Shutterfly's modified terms when she continued to use Shutterfly's services because the prior terms informed users Shutterfly may revise them "from time to time" and that "continued use" of the applications constituted assent to those changes).

Second, Plaintiff tellingly avoids DSG's cases establishing that courts routinely enforce updated terms when an individual continues to use a company's product or service after a company emails notice of updated terms—similar to what DSG sent Plaintiff here. *See* Mot. at 13. DSG presented evidence that a clearly-written email with further notice of the arbitration clause was delivered to Plaintiff. Plaintiff <u>does not dispute</u> (much less submit evidence to dispute) that she received the notice by email, or that she continued to interact with DSG's website. *Id.*; *see also Stephenson v. AT&T Servs., Inc.*, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) (arbitration provision enforceable where plaintiff failed to rebut a presumption that defendant's emails were delivered). DSG has thus established that she received the notice, which independently supports application of the 2017 Terms.[3]

---

[3] Plaintiff's case law does not help her cause. The court in *Miracle-Pond v. Shutterfly, Inc.* did not rely on email notice to determine assent; rather, it found assent by plaintiff using Shutterfly's services after the changes, just as Plaintiff did here. 2020 WL 2513099, at *8. Moreover, *Rodman*

4

**B.**     **The Court Should Compel Arbitration Because the Parties' Agreement Delegates All Other Questions to the Arbitrator, and These Disputes Fall Within its Scope.**

The 2015 and 2017 arbitration agreements contain clear language delegating disputes over the scope or enforceability of the agreements to the arbitrator. The Opposition ignores binding Supreme Court precedent that requires, when such language is found in an agreement to which the parties assented, that questions regarding enforceability and scope of an agreement be delegated to the arbitrator. *See* Mot. 15–17. Moreover, even if the Court were to address the challenges to the arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Despite Plaintiff's attempt to blur the language, the 2015 and 2017 Terms plainly state that they apply to DSG's "operations at or through . . . our stores/locations[.]" ECF No. 63-2, Green Decl., Ex. C at ECF Page 28, 36.[4] The 2017 Terms also specify that the parties must arbitrate any dispute, including those "arising out of or relating to . . . DICK'S digital operations at or through . . . our stores/locations." Green Decl., Ex. C at ECF Page 45, ¶ 21. Plaintiff's claims fall within the scope of the broad arbitration provision.

**III.     CONCLUSION**

For the foregoing reasons and those in the Motion, DSG respectfully requests that the Court grant DSG's Motion and compel arbitration of Plaintiff's claims.

---

*v. Safeway Inc.*, 125 F. Supp. 3d 922 (N.D. Cal. 2015), has no bearing here, because a prior decision in that case found the email notice inadequate because it "did not refer to the Special Terms or indicate that Safeway had made any change to them," neither of which occurred here. 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015). Finally, just as in *Sacchi v. Verizon Online*, Plaintiff here does not dispute that she received affirmative notice of the amendments, thus the receipt of notice and use of the services manifests assent to the new Terms. 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015).

[4] The 2017 Terms also define "Sites" to include DSG's "stores/locations." ECF No. 63-2, at 36.

5

Dated: March 14, 2022                    /s/ *Jasmeet K. Ahuja*

Jasmeet K. Ahuja (PA 322093)
jasmeet.ahuja@hoganlovells.com
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel:  (267) 675-4600
Fax:  (267) 675-4601

Michelle A. Kisloff (DC 477775) (*pro hac vice*)
michelle.kisloff@hoganlovells.com
Joseph J. Cavanaugh (DC 1616917)
joe.cavanaugh@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel:  (202) 637-5600
Fax:  (202) 637-5910

6

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on this 14th day of March, 2022, a true and correct copy of the foregoing was filed and served electronically via the Court's CM/ECF system upon all registered users in this action.

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja